[No. 750. Decided May 9, 1893.]

## COLUMBIA & PUGET SOUND RAILROAD COMPANY, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.

### MUNICIPAL CORPORATIONS—STREETS OVER TIDE LANDS.

Under the constitution and laws of this state cities of the first class have, as against private parties, the absolute right to extend their streets over and across the tide lands lying within their corporate limits, subject only to the rights of navigation in the waters covering such tide lands.

Where a city, by an ordinance regularly passed, recognizes the existence of a street over a certain portion of tide land, and provides for the widening and extension thereof, and the city, by its proceedings, is estopped to deny that such location is a street, such location must be held to be a street as to the public generally, and no private person can question the city's right to establish it.

(STILES and ANDERS, JJ., dissent.)

*Appeal from Superior Court, King County.*

*Andrew F. Burleigh*, for appellant.

*George Donworth*, and *James B. Howe*, for respondent.

The opinion of the court was delivered by

HOYT, J.—The only question involved in this case is as to whether or not a certain part of the tide lands within the corporate limits of the city of Seattle is a public street of said city. If it is, the judgment of the court below must be affirmed, and if it is not, it must be reversed.

Respondent relies upon each of several grounds as being effectual to constitute it a street, but in view of a division of the court upon some of the questions thus presented, but a single one will be stated here, that alone, in the opinion of the majority of the court, being sufficient to determine the controversy between the parties.

By the constitution and laws of the state, cities of the first class are given the right to project or extend their

streets over and across any tide lands within their corporate limits, and along or across the harbor areas of such cities. The provision of the constitution is not as comprehensive as this; it only empowers such corporations to extend their streets to and across the harbor area. But this provision, interpreted and supplemented in the light of the action of the legislature as above stated, in our opinion, confers full power upon such cities to extend any of their streets over any of the tide lands within their corporate limits. The legislation above referred to was enacted at the same session of the legislature which enacted the law which recognizes in an occupier, improver or shore land owner any right in such tide lands. It follows that the acts must be interpreted together, and in the light of the constitutional provision as to the right of cities to extend their streets over tide lands. And construing all these provisions together it seems to us that the rights conferred upon such cities by such constitutional provision and such legislation must be held to be paramount to those of private parties. From this it follows that the city had the absolute right to extend any of its streets over the tide lands, subject only to the superior right of the use of the waters for purposes of navigation.

Such being the case, the only question left for us to decide is as to whether or not the city has in fact extended Second street over the location in controversy. In our opinion the proof shows that it has. It appears therefrom that an ordinance was regularly passed which clearly recognized the existence of a street over a portion of the location, and provided for its widening and extension as such street. Enough was done by this ordinance and under it to estop the city from setting up the fact that the location in question was not a street. It, therefore, became a street as to the city and the public generally. And as, under the legislation, no private person had any inter-

est which would authorize him to question the right of the city to establish such street, it must be held that by such action on the part of the city the location became a part of Second street.

We do not now decide as to the right of the city to lay out upon the tide lands a street which is not a direct extension of an existing street on the upland. But we do decide that, under the constitutional provision and the act of the legislature above referred to, a city can extend any of its streets in a direct course across the tide lands, and that when it has done so no private person can prevent its taking possession of and improving the same.

DUNBAR, C. J., and SCOTT, J., concur.

STILES, J. ( *dissenting* ). — The foregoing opinion does not make any reference to what I consider the most vital point in the case, and the point which ought to cause a reversal. All other questions aside, the appellant showed that it had been in possession of these tide lands for many years with its railroad tracks and machine shops, all of which it had constructed on piles. The premises constituted a railroad wharf, and the respondent, without any regard to the appellant's improvements, and to the destruction of some of them, was proposing to open a street when this injunction suit was brought.

Whatever may be said as to the proper construction of art. 15, § 3 of the constitution, authorizing cities to extend streets to the " harbor areas, " I am satisfied that the legislature, by the act of 1890, authorizing cities to project or extend their streets over tide lands, did not for one moment contemplate that the rights of " improvers " of tide lands should be taken away in the opening of streets, without compensation to the owners. The general legislation in the state contradicts any such proposition. The act of the same year concerning school lands carefully protected

every improver of them, so that he could not be dispossessed until his improvements were paid for, even though he were a mere squatter (*Wilkes v. Hunt*, 4 Wash. 100, 29 Pac. Rep. 830); and so, in dealing with tide lands, while the same liberality was not manifested, by requiring purchasers of these lands to pay for improvements which they had not themselves placed there, the right of preëmption was given to improvers, which was not given to settlers on school lands. In degree, the liberality was equal. But this decision practically holds that improvers of tide lands have no rights when their improvements happen to lie in the course of a. street extension.

The act of February 28, 1890 (Laws, p. 733), declaring all streets in incorporated cities which extended from high tide into the navigable waters, public highways, only applied to improved ways, not to imaginary ones. There can, in the nature of things, be no such thing as a street in navigable waters, unless it is in the shape of a causeway of wood, iron, stone, earth, or something equivalent.

I hold that the power to project and extend streets over tide lands granted by the thirty-seventh paragraph of the act of March 24, 1890, to cities of the first class, was intended to have precisely the same application to private persons as the seventh paragraph, which authorized them to lay out, open and extend streets, alleys, etc., and of the eighth, which authorized them to change the grade of streets. They can do none of these things without compensation to the owner of property taken or damaged, and as the right of preëmption inuring to a tide land improver is certainly property, he should be equally protected. The act of March 24th was passed with an emergency clause, and went into effect at once. The tide land act was passed two days later; and if there is any conflict between the two the latter should prevail.

ANDERS, J., concurs.