[No. 8175.   Department Two.   January 12, 1910.]

THE STATE OF WASHINGTON, *on the Relation of the City of Port Angeles, Appellant,* v. D. W. MORSE, *Respondent.*[1]

QUO WARRANTO—MOTION TO QUASH—DEMURRER.   A motion to quash a quo warranto, upon the ground that the information did not state sufficient facts to entitle the relator to the relief prayed, may properly be treated as a demurrer to the information.

MUNICIPAL CORPORATIONS—ORDINANCES—FRANCHISES — WHARVES. An ordinance granting a franchise to maintain a wharf commencing at the foot of a street and extending along the line of the street extended into tide water, is not a franchise to use a public street.

MUNICIPAL CORPORATIONS—CHARTER—POWERS—FRANCHISES.   Bal. Code, § 938, authorizing cities of the third class to sell, dispose of or rent "water front" refers only to water front property to which the city has title, and not to water front of which it has control as a public street.

MUNICIPAL CORPORATIONS—ORDINANCES—FRANCHISES — LEASE — REMEDIES—QUO WARRANTO.   An ordinance purporting to grant a franchise to maintain a wharf on city water front property for a term of years, reserving rent and right of reentry, is a lease and not a franchise, and the remedy of the city for nonpayment of rent is by an ordinary action, and not by quo warranto for usurpation of a franchise.

WHARVES—RIGHT TO MAINTAIN—MUNICIPAL CORPORATIONS—TIDE LANDS.   The territorial act, Bal. Code, § 4077, providing that cities may authorize the construction of a wharf at the terminus of a street, has been superseded by Const., art. 15, and the laws enacted in pursuance thereof for the sale, lease or control of tide lands and harbor areas by agents of the state, so far as the same affects tide lands not owned by the city or included in public streets extended over the tide lands.

[1]Reported in 106 Pac. 147.

Appeal from a judgment of the superior court for Clallam county, Still, J., entered April 16, 1909, dismissing a quo warranto proceeding, upon sustaining a demurrer to the information. Affirmed.

*Geo. Venable Smith,* for appellant.

*J. E. Cochran,* for respondent.

PARKER, J.—This proceeding was instituted in the name of the state, by information in the nature of quo warranto, wherein it is alleged, in substance, that the proceeding is instituted by authority of a resolution of the city council of the city of Port Angeles; that the respondent holds and exercises a certain franchise, granted to him by said city by an ordinance which, so far as necessary for us to notice its terms, is as follows:

"Ordinance No. 353.

"An ordinance granting to D. W. Morse and his assigns, the right to construct and maintain a wharf at the foot of Laurel street in the city of Port Angeles.

"The city council of the city of Port Angeles do ordain as follows:

"Section 1. That there is hereby granted to D. W. Morse and his assigns the right to construct and maintain a wharf at the foot of Laurel street in the city of Port Angeles, for a period of ten years, from and after the 12th day of May, 1907.

"Section 2. That said wharf shall commence at the foot of Laurel street and extend northerly into the Port Angeles Bay, along the line of said Laurel street, extended, from the foot of Laurel street to "T" of present dock, and shall be at least twenty-six feet wide, along said line of Laurel street, extended.

"Section 3. That said wharf and its approaches shall be constructed and maintained in a substantial and good workmanlike manner, and may be subject to inspection and approval of the civil engineer of the city of Port Angeles.

"Section 4. That said grantee and his assigns shall have the right to receive and collect, only such rates for wharfage, storage and dockage as the city council of said city may,

from time to time, establish, and said wharf shall be subject to the laws of the state of Washington, and to the ordinances of said city, regulating wharves.

"Section 5.    That this ordinance shall not be construed to take any of the rights of the public to the use of Laurel street or to said wharf, as a public highway.

"Section 6.    This franchise is granted upon the further conditions and considerations, to wit: . . . .

"*Third.*    That said grantee or his assigns pay to city of Port Angeles the sum of ten dollars per month, for each and every month, during the term of said franchise, for the use of said dock and for the rights and privileges herein granted, payable monthly. . . .

"Section 6.    Should said D. W. Morse, or his assigns fail to comply with any or all of the conditions of this ordinance, then and thereupon this ordinance shall become null and void, and all the rights and franchises herein granted shall become forfeited.

"Section 7.    This ordinance shall take effect and be in force from and after its passage, approval, the filing of the acceptance of the same by said grantee, and from and after five days after its publication."

that on July 13, 1907, respondent duly accepted said ordinance with the rights and privileges therein mentioned and subject to the terms and conditions therein expressed, and in and by virtue thereof took possession of the water front therein mentioned, and has ever since used the same for the business of a wharf, collecting and retaining all fees, tolls and emoluments thereof; that respondent having failed to pay any of the monthly rental due the city under said ordinance, the city notified him on February 17, 1909, that unless he paid the same within five days, action would be brought to collect the same and for judgment ousting him from said wharf privileges and enjoining him from exercising said privileges; that defendant thereupon refused to pay said rent, and denied the right of the city to collect the same, and denied the right of the city to interfere with his possession of said wharf and his right to maintain the same. The prayer is, in substance, for judgment forfeiting all of

respondent's rights granted under said ordinance; that he be enjoined from exercising the same; that he be ousted from the possession of said wharf; and that judgment be given relator for damages against defendant equal in amount to the rent unpaid.

The respondent moved to quash the information upon the ground:

"That the purported information does not set forth facts constituting either an intrusion into or usurpation of any public office; or unlawful holding or exercise of any public franchise.

"That the facts alleged in the information constitute, if any, cause of action, only upon civil contract between the city of Port Angeles, one party and D. W. Morse, an individual, the other party thereto; or for unliquidated damages; to which in either case the state of Washington is not a proper party; and in which the state has no interest or concern, and for which the law affords full and adequate relief to each party without the intervention of this or any other extraordinary remedy."

Other causes assigned in the motion we need not notice. The trial court evidently treated the motion as a demurrer, and upon the hearing thereof, the same was sustained; and the relator electing to stand upon its information and declining to amend the same, judgment was entered dismissing the cause, from which this appeal is prosecuted.

It is first contended by learned counsel for the relator that the motion to quash was not a proper method of testing the sufficiency of the information. We think, however, in view of the grounds stated in the motion, challenging the sufficiency of the information to entitle the state to the relief prayed for, it was in effect a demurrer, and put in issue the question of law as to whether or not the facts pleaded would warrant the relief prayed for. *State ex rel. Attorney General v. Seattle Gas & Elec. Co.*, 28 Wash. 488, 68 Pac. 946, 70 Pac. 114.

The right to institute and maintain this proceeding in the

name of the state is based upon subdivision 1, of § 5780 of Ballinger's Code, which provides:

"An information may be filed against any person or corporation in the following cases:

"(1) When any person shall usurp, intrude upon (into), or unlawfully hold or exercise any public office or franchise within the state, or any office in any corporation created by the authority of the state."

And the principal question presented is, Do the acts which the information charge as being done by respondent constitute an unlawful holding or exercising of any public franchise? This necessitates an inquiry into the nature of the relation of the respondent to the city, and the nature of the city's rights in or control over the land upon which respondent is maintaining the wharf in question. The facts alleged in this information, it seems to us, negative the fact that this wharf is being maintained upon a public street. Section 2 of the ordinance clearly indicates that it is located beyond the end of Laurel street, upon the line of the street extended into the bay. It is true that section 5 seems to reserve some right in the public to use the wharf as a public highway, but that does not show that the city holds or has the right to control the ground upon which the wharf is located, as a public street. Therefore the acts charged against respondent do not appear to be a holding of a public franchise to use a public street.

Learned counsel for relator contends that subdivision 2 of § 938 of Ballinger's Code gives the city power to grant the rights here being exercised by respondent. That section, being a part of the charter of cities of the third class, to which relator belongs, provides:

"The city council of such city shall have power,— . . . . (2) To purchase, lease or receive such real estate and personal property as may be necessary or proper for municipal purposes, . . . to control, dispose of and convey the same for the benefit of the city: Provided, that they shall not have the power to sell or convey any portion of any water front,

but may rent such water front for a term not exceeding ten years. . . . "

It seems to us this must refer only to such water front property as the city has title to, and not to such as it has control of only as public streets. It hardly needs citation of authority to show that the state would have no interest in a controversy between a city and one of its tenants upon land held by the city in this manner. The relation of the city and such a party would simply be that of landlord and tenant, and of course their respective rights involved in dispute would be a matter of private litigation between them in which the state would not be a proper party. 17 Ency. Plead. & Prac., 404. If then, the city holds this land so it may rent the same under the provision of section 938, and the respondent is wrongfully in possession thereof by reason of the forfeiture of his rights under this ordinance or otherwise, let the city sue to recover its property in its own name as any other person or corporation may do. A leasing or renting of property by a city, cannot be converted into a public franchise by merely calling it such in the writing which may evidence such leasing or renting. If this ordinance granting the use of this wharf location was under section 938, it was not the granting of a public franchise, any more than the renting of any other land the city happens to own would be.

It is also contended that warrant for the city's power in the passage of this ordinance can be found in § 4077, of Ballinger's Code, which provides:

"Whenever any person or persons shall be desirous of erecting a wharf at the terminus of any street of any incorporated town or city in the state, he or they may apply to the municipal authorities of such town or city, who, if they shall be satisfied that the public convenience requires said wharf, may authorize the same to be erected and kept in repair for any length of time not exceeding ten years."

This section, of course, must refer to the terminus of a street which extends to navigable water, or at least to tide

land bordering on navigable water. It was enacted by the territorial legislature long before the admission of the state, and consequently at a time when tide land and harbor area were not subject to private ownership, or to any law providing for their disposition, being held for the future state to dispose of and control as it might see fit, though it may be conceded the territorial legislature could regulate their use prior to statehood. Now, assuming that this wharf is outside the limits of a platted and dedicated street, as we have seen the information indicates; and assuming that the wharf is upon either tide land or harbor area or both, it at once becomes evident that whatever right the city has to control the use of such land or harbor area must be derived from the state, under article 15 of the constitution, and laws enacted in pursuance thereof. We can see three possible ways in which the city might have acquired control over this land and harbor area. First, the city might have extended its streets over such lands, or the same might have been platted and dedicated as a street by the state, as provided by § 3, article 15 of the constitution, and the laws enacted in pursuance thereof providing the manner of doing so. As we have seen, this information negatives the idea of either of these having been done. So the city would have no control over the land or area, as a public street, upon which the wharf is located. *State ex rel. Gatzert-Schwabacher Land Co. v. Bridges*, 19 Wash. 428, 53 Pac. 547. Second, the city may have acquired control over the tide land by purchase or lease. Third, the city may have acquired control over the harbor area by lease. Our attention has not been directed to any law enacted in pursuance of article 15 of the constitution providing any different means of acquiring control over these lands and areas by cities. The Laws of 1895, p. 527, Laws of 1897, p. 229, and Laws of 1899, p. 225, have prescribed the manner of disposition of these lands and areas in one or the other of these ways, by the agents of the state. Section 4077, above

quoted, enacted by the territorial legislature, it is argued, is not inconsistent with the laws regulating the disposition and lease of tide land and harbor area, enacted since the adoption of the constitution. We think it is inconsistent with, and is superseded by, such laws, in so far as it assumed to give to cities the right to control the use of land or harbor area outside the limits of a platted or dedicated public street. Whether or not it is in force so as to empower a city to grant such a use of land *within a street*, as this ordinance purports to grant, we need not now determine; neither need we determine whether such a grant within a street would be the grant of a public franchise.

We are then led to the conclusion that whatever right of control the city may have over the land and area upon which this wharf is located it is not that control which is incident to a public street. Its rights and powers can in no event be other than that of purchaser or lessee from the state, in which event its ownership or control would be the same as that of any other person or corporation holding by such purchase or lease. In other words, it would be private property of the city, with only such restrictions upon its use as any other owner or lessee would be subject to. This being the case, it follows as we have indicated, that the acts charged as being done by respondent do not constitute the unlawful holding or exercising of a public franchise. If such acts in any way invade the rights of the relator, they become nothing more than the subject of private litigation between them, in which the state has no concern; and hence the matters here sought to be drawn in controversy cannot be litigated in the name of the state as plaintiff.

We conclude that the learned trial court committed no error in dismissing the cause, and its judgment is therefore affirmed.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.