[No. 9217. *En Banc.* July 26, 1911.]

CHLOPECK FISH COMPANY *et al., Appellants,* v. THE CITY OF
SEATTLE *et al., Respondents.*[1]

NAVIGABLE WATERS—CONTROL—COMMERCE—HARBOR AREA—STREETS
—CONSTITUTIONAL PROVISIONS. City streets may be extended in
any direction over the harbor area to deep water at the outer
harbor line, under Const., art. 15, § 1, providing that the harbor
area between the inner and outer harbor lines shall be forever re-
served for landings, wharves, streets, and other conveniences of
navigation and commerce, and art. 15, § 3, granting to cities the
right to extend their streets "over intervening tide lands to and
across the area reserved as herein provided."

NAVIGABLE WATERS—LANDS UNDER WATER—HARBOR AREA—STREETS
—TITLE OF STATE. The granting by the state to a city of an ease-
ment of a street over harbor area is not a surrender of title by the
state, the state having plenary control over streets, which may be
delegated to municipalities.

SAME. The provisions of Laws 1890, p. 731, § 5, authorizing the
establishment of waterways to be extended inland across tide lands,
including, if practicable, navigable streams, and which are to be
forever reserved for public ways for water craft, has no application
to street extensions across tide lands and harbor area.

NAVIGABLE WATERS—HARBOR AREA—STREETS—PLATS—DEDICATION
—MUNICIPAL CORPORATIONS—USE OF "CITY SLIP." In a plat of streets
across tide lands and harbor area, the designation at the end of
certain streets, "city slip," does not indicate that such streets were
to be reserved as open spaces for vessels, but rather, that they were
dedicated to the city for a usable connection of the street with the
open harbor, especially when such had been the previous use, and
that intent was explained to the legislature at the time of the
adoption of the plat.

MUNICIPAL CORPORATIONS—STREETS — ACROSS HARBOR AREA — IM-
PROVEMENT—WHARVES—NAVIGABLE WATERS — COMMERCE. A city of
the first class has authority to construct in a city street extending
to deep water across the harbor area, between the inner and outer
harbor lines, a gridiron wharf for use as a public landing and con-
venience to navigation in connection with the use of the street,
under its general powers conferred by Rem. & Bal. Code, § 7507,
providing that it may construct and maintain public landing places,
wharves, and docks, and extend its streets across tide lands and

[1]Reported in 117 Pac. 232.

harbor areas in such manner as will best promote the interests of commerce.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—TAKING PROPERTY—WHARF IN EXTENSION OF STREET—DAMNUM ABSQUE INJURIA.  Where a plat of city tide lands and harbor area showed the dedication of a street as a "city slip," giving the public as much right to use the same as property owners, the construction by the city of a gridiron wharf for public use in that portion of the street extending across the harbor area is not a taking or damaging of private property of abutters who had previously leased from the state the harbor area abutting on such portion of the street, for the purpose of maintaining docks and wharves in aid of commerce and navigation; any inconvenience suffered in the use of improvements thereon being *damnum absque injuria.*

CHADWICK and MOUNT, JJ., dissent.

Appeal from a judgment of the superior court for King county, Main, J., entered July 6, 1910, in favor of the defendants, dismissing an action to enjoin a city in the construction of a wharf in a street extended over tide lands and across the harbor area, after a hearing before the court.  Affirmed.

*Kerr & McCord* and *Farrell, Kane & Stratton,* for appellants, contended, among other things, that the city has no authority to place or maintain structures in a street that interfere with its public use as a street or affects the beneficial enjoyment of abutting owners.    28 Cyc. 853; Elliott, Roads and Streets (2d ed.), 647; Dillon, Municipal Corporations, p. 660; *Hill v. New York,* 139 N. Y. 495, 34 N. E. 1090; *Barrows v. Sycamore,* 150 Ill. 588, 37 N. E. 1096, 41 Am. St. 400, 25 L. R. A. 535; *Morrison v. Hinkson,* 87 Ill. 587; *Lutterloh v. Cedar Keys,* 15 Fla. 306; *McIlhinny v. Village of Trenton,* 148 Mich. 380, 111 N. W. 1083, 118 Am. St. 583, 10 L. R. A. (N. S.) 623; *Davis v. Appleton,* 109 Wis. 580, 85 N. W. 515; *Harrisburg's Appeal,* 7 Pa. Cas. 322, 10 Atl. 787; *Bischof v. Merchants' Nat. Bank,* 75 Neb. 838, 106 N. W. 996; *Harding v. Cowgar,* 127 Ind. 245, 26 N. E. 799; *Viebahn v. Board of Com'rs,* 96 Minn. 276, 104 N. W. 1089, 3 L. R. A. (N. S.) 1126; *Hughes v. Providence etc.*

*R. Co.*, 2 R. I. 493; *Pettit v. Grand Junction, Greene County,* 119 Iowa 352, 93 N. W. 381; *Harper v. Milwaukee,* 30 Wis. 365; *St. John v. Mayor etc. of New York,* 3 Bosw. (N. Y.) 483; *City of Morrison v. Hinkson,* 87 Ill. 587, 29 Am. Rep. 77; *Mayor etc. of Columbus v. Jaques,* 30 Ga. 506; *New Orleans v. United States,* 10 Pet. 662, 719; *Meyers v. St. Louis,* 8 Mo. App. 266; *American Ice Co. v. New York,* 193 N. Y. 673, 87 N. E. 765. "In the absence of express legislation, a city has no implied right under the general powers granted in respect to highways or for its general government to erect a wharf at the end of a public street along a water front and to charge wharfage for the use of the same." *The Geneva,* 16 Fed. 874; *Russel v. The Empire State,* Fed. Case, No. 12,145; *In re Cramp's Appeal,* 13 Phila. 16, 36 Cent. Digest, par. 211; *Galindo v. Walter,* 8 Cal. App. 234, 96 Pac. 505; *Conradt v. Miller,* 2 Alaska 433. The city could not, in the nature of things, have any implied power to encroach on the state harbor areas to erect any structure on the water highways outside the limits of the tide lands. *Commonwealth v. Coombs,* 2 Mass. *489; *Marblehead v. County Com'rs,* 5 Gray 451; *Commonwealth v. Gloucester,* 110 Mass. 491; *St. Louis v. Myers,* 113 U. S. 566; *Seattle & M. R. Co., v. State,* 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 32 L. R. A. 217. The erection of the proposed gridiron in the harbor area is an unlawful taking of appellants' property. *Story v. New York Elev. R. Co.,* 90 N. Y. 145; *City of Oswego v. Oswego Canal Co.,* 6 N. Y. 257; *Langdon v. Mayor etc. of New York,* 93 N. Y. 129; *Williams v. Mayor etc. of New York,* 105 N. Y. 419, 11 N. E. 829.

*Scott Calhoun* and *H. D. Hughes,* for respondents.

Ellis, J.—The state's first plat of the Seattle tide lands and water front was filed in February 1895. It extended every alternate street of the city streets, originally running to the water front, in a direct line over the tide lands and harbor area to the outer harbor line. Among these streets was Vine street,

which was thus extended a little over 300 feet, practically at
right angles to the upland. All of these extensions were 100
feet in width.

In 1897 the city of Seattle caused to be prepared a cor-
rection or revision of the above mentioned plat and submitted
the same to the state legislature for action thereon, and the
legislature, by chapter 28, page 32, Laws of 1897, authorized
and instructed the state land commissioners to correct and
revise the original plat to conform thereto. By this replat
the same streets were extended over the tide lands and across
the harbor area to the outer harbor line, not in a direct line
as before, but at an angle of about 45 degrees to the upland.
The extension of Vine street was thus increased from about
300 feet to over 500 feet. On the revised plat the extensions
are all 100 feet in width, excepting Vine street, Madison street
and Harrison street the extensions of which are 150 feet in
width. All of these extensions or prolongations are desig-
nated in large letters as streets, the name in each instance
being the same as that of the corresponding upland street,
thus "Battery street," "Vine street," etc. In the case of
Vine street, underneath the street designation appears in
small letters in parenthesis the words "city slip." This is
explained by a witness, Mr. George F. Cotterill, who actually
made the replat and presented it to the legislature on behalf
of the city, as follows: Prior to the adoption of the replat,
and for some years thereafter, the city maintained on the
site of the proposed present structure, hereinafter described,
a public slip or landing place somewhat similar to the one
now sought to be enjoined. A copy of this replat, so far as
applicable to Vine street, is in the record and shows this old
structure. Mr. Cotterill states that these three streets, Vine,
Madison and Harrison, spaced practically at uniform inter-
vals along the city's central water front, were platted each
150 feet in width, and the words "city slip" in parenthesis
were placed upon each of them and the extra width given with
the intention of perpetuating at Madison street and Vine

street the then existing municipal facilities for slips, public landings and general transition from water to land, and to provide that such could be done at Harrison street whenever the development of the city should demand it. He further says that he explained these things to the legislature as features of the replat and the necessity of these wider streets for the purpose of landings for municipal purposes. This witness also testified that the old structure in the Vine street extension was at a later date remodeled and used as a garbage scow wharf and a public landing generally.

The appellants, the Chlopeck Fish Company and Columbia & Puget Sound Railroad Company, are respectively the owners of the upland and tide land lots abutting the south and north sides of Vine street at its intersection with the waters of Elliott bay. They are also the lessees from the state of the harbor area in front of their respective tide lands. The tide lands on either side of Vine street are narrow, the inner harbor line lying about 20 to 25 feet westward from the westerly line of Railroad avenue, which crosses Vine street at the point here in question practically at right angles. The fish company has built a dock extending outward over the harbor area a distance of 175 feet into a depth of water at the outer end at low tide of about 25 feet. This dock has a frontage of 142 feet. It is of a value of $150,000. The railroad company has also built a dock on the north side of Vine street extending outward over the harbor area 190 feet. This dock is of a value of $100,000.

The respondent, the city of Seattle, is proposing to erect, between the inner and the outer harbor line and in the middle of the above described extension of Vine street, a structure which is termed in the record a gridiron. This will be, if constructed, a low wharf or cradle and roadway built on piling, submerged, except as to the roadway, three or four feet at ordinary high tide, so that scows, barges and water craft of like character can be floated over it and allowed to settle upon it for the purpose of unloading and transferring

their cargoes to vehicles which may be driven from the lateral roadway onto the vessels and off again, and likewise for loading. This gridiron wharf will occupy a space about 51 feet wide, including the roadway, and will be 220 feet in length. The southerly 20 feet will constitute the roadway. There will be approximately 50 feet of open water on each side of the structure.

The city has let a contract to its co-respondent for the erection of this structure. It will be for the use of the public and all persons desiring to load and unload thereat brick, sand, gravel, hay, oats, or any other thing or commodity for transportation by water craft of the character above mentioned. The city is intending to establish a wharfage charge to persons using this wharf, to defray the reasonable cost of maintenance. That fact, however, would seem to be immaterial to any issue involved in this case.

The evidence shows that if the appellants extend their docks to the outer harbor line, as they may do under their leases, there will still be 360 feet of open water 150 feet wide alongside the dock of appellant railroad company and 260 feet along the dock of appellant fish company. The appellants brought this action to enjoin the construction of the proposed gridiron wharf, challenging the right of the city to erect it in the place proposed, and claiming that it will injure them in the use of their wharves and will be a damaging of their property without just compensation. A temporary restraining order was granted by the trial court, and upon final hearing this order was discharged, appellants' bill dismissed, and judgment rendered against appellants for costs. From this final judgment, this appeal was prosecuted.

The appellants contend, that the city has no right or authority to erect the proposed gridiron wharf or any other structure in the extension of Vine street between the inner and the outer harbor lines, because, as they claim, that part of this extension is not a street but a part of the harbor area; that the city cannot extend its streets across the harbor area;

and that the constitution and legislative enactments show an intention to devote the harbor area to the purposes of navigation and commerce by means of "water crafts," and negative any power in the state to extend streets as such over the harbor area.

The initial power of the state to extend streets across the reserved area to the outer harbor line, if it exists at all, must be sought in the state constitution. That document, in § 1, art. 15, provides as follows:

"The legislature shall provide for the appointment of a commission whose duty it shall be to locate and establish harbor lines in the navigable waters of all harbors, estuaries, bays, and inlets of this state, wherever such navigable waters lie within or in front of the corporate limits of any city, or within one mile thereof upon either side. The state shall never give, sell, or lease to any private person, corporation, or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high tide, and within not less than fifty feet nor more than six hundred feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its rights to control the same be relinquished, but such area shall be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce."

This is the only provision of the constitution authorizing the state through its legislature to provide for the delimitation of any harbor area. By necessary implication it also gives authority to plat the area in order to carry out the purposes for which it is reserved: namely, "for landings, wharves, streets, and other conveniences of navigation and commerce." It is conceded that this section confers power on the state to lay out streets over tide lands, but it is urged that the streets must be confined to tide lands and cannot be laid out across the harbor area. A reading of the section with the context convinces us that this position is not tenable. This section is as plain a recognition of streets as conven-

iences of navigation and commerce as it is of landings and
wharves.   It evinces no stronger intention to confine streets
to tide lands than it does to so confine landings and wharves.
Moreover, § 3 of this same article 15, authorizes cities to
extend their streets across the harbor area.   It reads as fol-
lows:

"Municipal corporations shall have the right to extend
their streets over intervening tide lands to and across the
area reserved as herein provided."

It can hardly be conceived that the framers of the consti-
tution intended to grant to the state less power in this
regard than they thus plainly gave to municipalities.   But
appellants argue that the last quoted section must be con-
strued as only authorizing cities to extend their streets "to
the harbor area over the intervening tide lands," citing
*Columbia & P. S. R. Co. v. Seattle,* 6 Wash. 332, 33 Pac.
824, 34 Pac. 725; *Seattle & M. R. Co. v. Seattle,* 7 Wash.
150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217; *Seattle
v. Columbia & P. S. R. Co.,* 6 Wash. 379, 33 Pac. 1048;
*Ilwaco v. Ilwaco R. & Nav. Co.,* 17 Wash. 652, 50 Pac. 572;
*State ex rel. McKenzie v. Forrest,* 11 Wash. 227, 39 Pac.
684; *Tacoma v. Titlow,* 53 Wash. 217, 101 Pac. 827.   While
it is true that in each of those cases expressions to that
effect were used, it is also true that all of those cases arose
in relation to streets across tide lands only.   The present issue
was neither involved nor was its decision necessary in any of
them.   On the other hand, in *State ex rel. Gatzert-Schwa-
bacher Land Co. v. Bridges,* 19 Wash. 428, 53 Pac. 547,
and *State ex rel. Port Angeles v. Morse,* 56 Wash. 654, 106
Pac. 147, the right to extend streets across the reserved area
is apparently recognized though not directly in issue.   The
words used in § 3, art. 15, are, "over intervening tide lands
to and across the area reserved as herein provided."   They
leave no room for construction.   It is a fundamental prin-
ciple, applicable in the construing of all written laws, and
especially in construing a document of the gravity of the

constitution, that if possible an effect must be given and a meaning accorded to all of the words used therein. We have no more authority to eliminate the words "across the area reserved" than we have to cancel the words "over intervening tide lands." We can do neither.

It is next contended that, assuming that the state owns the area between the inner and outer harbor lines, it has not and cannot surrender any of its title to the city of Seattle. But the laying out of a street is not a surrender of title. In fact an easement is all that a city has in nearly all of its streets. That an easement for public use is all that the city takes in streets laid out across the harbor area is implied in the decision of this court that the legislature has the power to vacate streets platted across the tide lands the fee of which was still in the state. The state has plenary control over streets, which it may delegate to municipalities. *Henry v. Seattle*, 42 Wash. 420, 85 Pac. 24; 2 Dillon, Municipal Corporations (4th ed.), § 666.

The provision in § 1, art. 15, of the constitution that no part of the harbor area shall "be sold or granted by the state, nor its right to control the same relinquished," was never intended to defeat the very object of the section as set out in the concluding words of the same sentence, "but such area shall be forever reserved for landings, wharves, streets, and other conveniences of navigation and commerce." The state relinquishes no more of its control by dedicating a street for public use than by making a lease to a private person or corporation. The manifest purpose of this section is to prevent the control of the water front of cities from ever falling into private hands. It was never intended to prohibit, but was plainly intended to insure to cities a usable connection of their streets with the navigable waters of the sea. *State ex rel. Denny v. Bridges*, 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593. It will be noted in this connection that the prohibition found in the first clause of this sentence against the sale, gift or lease of any rights whatever in the waters

beyond the harbor lines is applied to *private* persons, corporations or associations only.

It is argued that, inasmuch as a city cannot extend its streets across tide lands except in a direct line, as held in *Ilwaco v. Ilwaco R. & Nav. Co.*, 17 Wash. 652, 50 Pac. 572, and other decisions of this court, the state cannot do so, and that, therefore, the Vine street prolongation is not a street but a waterway. It will be noted that the holding in those cases is based upon the significance of the word "extend," found in § 3, art. 15, of the constitution. Neither the word "extend" nor any word of like import is found in § 1 of art. 15, which vests in the state control of the tide lands and harbor area. Unquestionably the state has power to lay out streets over the tide lands in any direction, and that power necessarily includes the authority to prolong existing upland streets either in a direct line or otherwise. Since, as we have seen, this same § 1 of art. 15, confers upon the state plenary control except as to sale or grant, over the reserved area as well as the tide lands, it follows that the state may extend or prolong upland streets over the tide lands and across the harbor area either in a direct line, as it did in the original plat, or at an angle to the upland streets, as it has done by the legislative adoption of the city's replat in the act of 1897 (Laws 1897, p. 32, ch. 28).

We are referred by counsel to the act of March 28, 1890 (Laws 1890, p. 731), as the law in pursuance of which these street extensions were platted by the state, and it is insisted they must be "forever reserved from sale or lease as public ways for water crafts," as provided in § 5 of that act. But that act provides for the establishment of one or more waterways across tide flats, to be not less than fifty nor more than one thousand feet wide. They shall extend inland across the state's tide lands, and where practicable they shall include navigable streams. Obviously it has no application to this Vine street slip, which neither extends inland across the state's tide lands nor includes a navigable stream. The fact

that the outer harbor line runs straight across the outer end of these extensions, that they are located at the termini of the upland streets, that they are continued of the same width and in the same direction as the streets are extended across the tide lands, and are prominently designated as streets with names corresponding to the upland streets respectively, makes it plain that these spaces so located and named are dedicated as prolongations of the streets.

It is also argued that the word "slip," in the parenthetical designation of the Vine street extension, shows an intention to reserve it solely as an open space for vessels to lie in between the appellants' wharves. The words used, however, are "city slip." The word "city" can no more be ignored than the word "slip." It indicates that the space, whether as slip or street, is dedicated to the city for public use. This designation being placed in conjunction with the principal designation "Vine street," conveys no other intention than to dedicate this space to the city for a usable connection of Vine street with the open harbor, and to confer jurisdiction upon the city to improve it for that use by the public. Moreover, if there is any ambiguity in the plat arising from this double designation, "Vine street" and "city slip," the intention of the legislature at the time of the adoption of the plat may be sought in the light of the facts and circumstances then before that body. This is certainly admissible to explain, though not to contradict, the plat. *State ex rel. McKenzie v. Forrest* and *Ilwaco v. Ilwaco R. & Nav. Co., supra.*

This revised plat was prepared by the city officials, and by them the words "city slip" were placed upon the Vine street extension. At that time there was in the old extension of Vine street a structure similar in character and use to the one here sought to be enjoined. This old structure was shown on the replat. The words "city slip" were used thereon with the avowed intention of continuing the facilities for use of the slip in connection with Vine street in the same manner as be-

fore. These things were explained to the legislature when it adopted the replat. In the light of these facts it can hardly be doubted that the legislature intended to authorize a continuance of the former use of the slip.

It is argued with much stress that the deflection of all these street extensions from a straight line is evidence that they were intended solely to accommodate large vessels and to extend the wharfage facilities of the leased area. But, as counsel for the appellants stated in argument, there were other advantages thus gained. Railroad spurs could thus be laid upon adjacent wharves, running to their face without making an acute and impracticable curve. Vessels, whether large or small, scows and barges in tow, could enter at an easy angle without making a sharp turn as they approached the shore. The deflection is plainly as advantageous to the use proposed by the city as to the use by appellants. It is advantageous for all interests concerned, the city; the lessees of adjacent wharves, and the railroads. It will also facilitate the construction of much longer private slips when required.

The appellants concede the right of the city to extend and improve its streets over tide lands, but contend that it has no authority to place any structure in the streets. They cite in support of this, *Globe Mill Co. v. Bellingham Bay Imp. Co.*, 10 Wash. 458, 38 Pac. 1112, where the court recognizes, *arguendo*, that both tide lands and intervening streets will ultimately be filled and become "solid land." This may be granted, but it seems far from holding that the terminus of a street may not be extended by a wharf or gridiron to make a practicable connection of solid land and navigable water. It is also true that in *West Seattle v. West Seattle Land & Imp. Co.*, 38 Wash. 359, 80 Pac. 549, the maintenance of a ferry slip in the street by private persons was enjoined as a nuisance on complaint of the city, but that is hardly authority for the contention that the city cannot lawfully maintain a slip and wharf at the terminus of a street, extending the same into navigable water for the use and convenience of the

general public. It is true, also, that neither the city nor any one else can lawfully erect a stand-pipe, or a steam engine, or an electric light plant, or a water tank, or a city hall, or a dumping board, or any other structure of like character in the streets, as held by other authorities cited by appellants; but there is a wide difference between these things and the construction of a wharf by the city at a street termination, leading into navigable water giving public access thereto, and in aid of general traffic between land and water. This is not only not inconsistent with the use of the street as a public highway, but is actually in aid of such use.

The appellants further contend that the city of Seattle is not authorized by any legislative act to erect a gridiron or a pier in any street extension over either tide lands or harbor area, and has no implied authority to do so. We cannot review in detail all of the authorities cited in this connection without unnecessarily lengthening this opinion. We will, however, refer to a few of them. In *The Geneva*, 16 Fed. 874, which more nearly sustains appellants than any other case cited, it appears that the borough of Elizabeth existed by virtue of a legislative charter which did not confer express authority upon the municipality to construct or own a wharf either in a street or elsewhere, or to exact tolls or wharfage for the use of any wharf. The court held, therefore, that it could not charge wharfage for the use of a wharf which it had constructed in a street. The only question directly involved was that of the right to charge wharfage. The case is not applicable to cities possessing the broad powers conferred by the enabling act upon cities of the first class in this state.

*Russel v. Empire State*, Fed. Case, No. 12,145 arose on libel for wharfage. Woodward avenue, in the city of Detroit, terminated at the water's edge of the river Detroit, a navigable stream. The city erected a wharf at the foot of the avenue extending beyond its terminus into the river. The city leased this wharf to the libelant, giving him "the sole and

exclusive right to use the public wharf for his ferry boats."
It was held that he could not collect wharfage as to other
vessels mooring there.   The court says:

"Unquestionably the city may improve, ornament and
grade for public convenience, either by enlargement or exten-
sion, the public streets; and with a view to public accommoda-
tion, erect at their termini, in the river, suitable wharves or
landings, but, by so doing, such erections become free to the
public, as extensions of the streets, and the city has no au-
thority, and can confer none, to exact toll for egress or re-
gress."

The court, so far from denying the right of the city to
extend the wharf into navigable water for public use in
connection with the street, distinctly recognizes that right.

*In re Cramp's Appeal*, 13 Phila. 16, was decided under a
statute of Pennsylvania giving the riparian owner the right
to construct a wharf in front of his property on procuring
a license from the port wardens.   The court held that this
right was appurtenant to the fee of the upland, that the fee
of the street was not in the city but in the owners of property
abutting the street, hence the port wardens could not grant
a license to the city to construct a sewer to the warden's
line to be covered and protected by a wharf.   The court
further held that the application was not made for the pur-
pose of creating dock or wharf facilities but in aid of sewer-
age, which was not a proper basis for an application to con-
struct a wharf.   The Pennsylvania rule as to riparian rights
in the harbor area has no application in this state.   The
preferential right of the owner of abutting lands to purchase
tide lands and to lease the harbor area in front thereof has
no analogy to riparian rights in other states.   *Gifford v.
Horton*, 54 Wash. 595, 103 Pac. 988; *Eisenbach v. Hatfield*,
2 Wash. 236, 26 Pac. 539, 12 L R. A. 632.

We have examined the other authorities cited by appel-
lants but they have no important bearing upon the question
here involved, in view of the powers conferred upon cities of
the first class in this state.

The enabling act, Rem. & Bal. Code, § 7507, confers upon cities of the first class powers as follows:

"(7)   To lay out, establish, open, alter, widen, extend, grade, pave, plank, establish grades, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds, and to regulate and control the use thereof.

"(26)   To deepen, widen, dock, cover, wall, alter, or change the channels of water ways and courses, to provide for the construction and maintenance of all such works as may be required for the accommodation of commerce, including canals, slips, public landing places, wharves, docks, and levees, and to control and regulate the use thereof;

"(27)   To control, regulate, or prohibit the anchorage, moorage, and landing of all water crafts and their cargoes within the jurisdiction of the corporation;

"(28)   To fix the rates of wharfage and dockage, and to provide for the collection thereof, and to provide for the imposition and collection of such harbor fees as may be consistent with the laws of the United States;

"(37)   To project or extend its streets over and across any tide lands within its corporate limits, and along or across the harbor areas of such city, in such manner as will best promote the interests of commerce."

Under the authority conferred by § 10, art. 11, of the constitution, the city of Seattle in its charter has affirmatively assumed all of these powers. To conserve space we quote only one of these charter provisions. A part of art. 4, § 18, subd. 37, asserts the power of the city:

"To project or extend or establish streets over and across any tide lands within the corporate limits of the city and along or across any harbor areas of the city, in such manner as will best promote the interests of commerce, and to excavate and improve, for the use as public slips or wharves, any of said streets, and to use all or any portion of every street extending to or projecting into the water as a public slip or wharf."

In the light of the sweeping powers conferred by the enabling act, we are constrained to hold that the city of Seattle was warranted in assuming the right asserted in the last

clause of the above quoted charter provision, and that it has the power to construct the proposed gridiron wharf in the Vine street slip. In this we are sustained by ample authority.

In *McMurray v. Mayor etc. of Baltimore*, 54 Md. 103, a case in every way analogous to this, the court says:

"In a city situated on navigable water, nothing is of more importance than the privilege of constructing wharves or piers for the benefit and promotion of commerce."

After reviewing various authorities, the court concludes:

"In our judgment the dedication of Cross street to the public use as a street extending to the water carried with it by necessary implication, the right of the city to extend it into the harbor by the construction of a wharf at the end thereof."

In *Backus v. Detroit*, 49 Mich. 110, 13 N. W. 380, 43 Am. Rep. 447, the street extended to the water front. In front of the lots on either side of the street the owners had constructed wharves two hundred and eighty-five feet and two hundred and seventy feet in length. The complainant, one of these owners, had excavated the space between the side lines of the street extended and was using it for a slip. He sought to enjoin the city from constructing a wharf therein for which work it had let a contract. The court, after an exhaustive review of the authorities, denied the injunction, using the following language:

"Authority, therefore, is very clearly and decidedly with the city, and the cases which favor its claim make no account of the question whether the title to the land under the water was or was not in the proprietor of the shore."

Dillon's Municipal Corporations (4th ed.), in § 110, states the law as follows:

"Where *streets terminating or fronting on navigable waters* have been established, whether by condemnation or dedication, and whether the fee is in the municipality or in the adjoining proprietor, the municipality, under legislative authority to establish and regulate wharves, may cause pub-

lic wharves to be constructed at the ends or in front of such streets and receive the wharfage from the same; and this is no invasion of the rights of the owner of private property abutting on such streets, or of the rights of the adjoining riparian proprietor."

The following authorities are to the same effect: Gould, Waters (3d ed.), § 106; *Barney v. Mayor etc. of Baltimore*, 1 Hughes 118; *Haight v. Keokuk*, 4 Iowa 199; *Barney v. Keokuk*, 94 U. S. 324; 28 Cyc. 853; *Potomac Steamboat Co. v. Upper Potomac Steamboat Co.*, 109 U. S. 672; *Newport v. Taylor's Ex'rs*, 16 B. Mon. (Ky.) 699.

It is argued with insistence that the use of these street extensions by the city as it now proposes to use the Vine street slip would limit the commerce of Elliott Bay to the front of the docks, since if it can so use one street it can all. The argument from convenience is sometimes accorded much weight, but in this instance it is hardly sound. Any private dock owner can construct a slip for his own private use if the use by the public of the public slips is incompatible with his use of them to his best advantage. Apparently the state is under no greater obligation to furnish him an exclusive slip free of charge than it is to supply him with an exclusive dock free of charge. Moreover, these appellants, by extending their docks to the outer harbor line, which the evidence shows is entirely feasible, will each have a greater dock frontage upon the open part of the slip outside of the city's gridiron than they now possess in the absence of the gridiron. If we give ear to the argument from convenience, it may be said that if the city cannot improve the Vine street slip for use in connection with that street then it cannot so improve any street. The street termini would thus be useless so far as the public is concerned. It is fairly inferable from the evidence that the present use of this Vine street slip is practically confined to that of the appellants. Their use, in the nature of things, must remain exclusive so long as the public has no means of using it in connection with the street.

It is manifest paradox to say that the general public has an equal right with the appellants to its use, which is certainly true, but that the city has no power to provide the facilities necessary to that use. It seems more consonant with reason, as well as authority, that the conceded existence of the right to use implies the power without which the right would be nugatory.

Finally, the appellants contend that the erection of this gridiron wharf is an unlawful taking of their property. They do not claim an exclusive property right in this Vine street slip, but assert that their purchase of tide lands and leases of harbor area in front thereof as platted implied a compact between the state, the city, and the appellants that no such structures should ever be erected in this Vine street city slip. From what we have already said it is manifest that this position is not tenable. We have seen that the state was authorized by the constitution to lay out streets across the harbor area to the outer harbor line; that it laid out this prolongation of Vine street and designated it "Vine street" "city slip" upon the plat by the act of 1897; that the city is authorized by the enabling act to construct wharves and landings and to control and maintain the same; that it has assumed this authority in its charter; that the city having statutory authority to construct and maintain wharves, has the implied authority to erect and maintain wharves at the termini of its streets and to extend the same into navigable water; that the plat of the Seattle tide lands and water front, with reference to which the appellants purchased their tide lands and leased the harbor area in front thereof, shows a dedication of this slip to the city for public use as a prolongation of Vine street; that the general public has an equal right with the appellants to use this slip for the purposes for which it was platted, and that this right carries with it the authority to provide facilities without which the right to use would be in effect denied to the public. It follows that no right of the appellants will be invaded by the

city in the creation of such facilities. They acquired their holdings with knowledge of the public right. *State ex rel. Bartlett v. Forrest,* 12 Wash. 483, 41 Pac. 194; *Kenyon v. Knipe,* 2 Wash. 394, 27 Pac. 227, 13 L. R. A. 142. Any damage or inconvenience which they may suffer by reason of the exercise of that right by the construction of a gridiron wharf, making a practicable connection between Vine street and the navigable waters of Elliott Bay, will be *damnum absque injuria.*

"This is no invasion of the rights of the owner of private property abutting on such streets, or of the rights of the adjoining riparian proprietor." 1 Dillon, Mun. Corp. (4th ed.), § 110.

See, also, *McMurray v. Mayor etc. of Baltimore* and *Barney v. Keokuk, supra; Gould v. Hudson River R. Co.,* 12 Barb. 616.

The importance to the public of the questions involved in this appeal, the able and earnest manner in which they have been presented by counsel, and the difficulty which we have experienced in reaching a decision, have caused an extension of this opinion to an intemperate length. We will, therefore, not review the decisions cited by appellants on this last point, further than to note that they all rest upon facts so widely divergent from the facts here presented as to take them outside of the principles of law which we conceive to be controlling in this case.

The judgment is affirmed.

DUNBAR, C. J., PARKER, MORRIS, CROW, GOSE, and FULLERTON, JJ., concur.

CHADWICK, J. (dissenting)—I do not concur in the reasoning or the judgment of the majority. The opinion proceeds upon a fundamental error, and in all such cases, the premise being assumed, the argument seems convincing. The error of my associates lies in this: They have assumed that the city has an ownership or superior easement in the so-

called streets as extended over the tide lands. This is not so. The extended street or way is state property, reserved as a convenience of navigation and commerce. Const., art. 15, § 1. The city is, as these appellants are, a mere licensee, and in the absence of express legislation, its privileges are equal, and necessarily the one licensee cannot interfere with the right of the other to use the public thoroughfare of the state. By the constitution, by every law ever passed upon the subject, and by every decision ever pronounced by this court concerning harbor areas, it has been declared that they are to be and remain open for the purposes of navigation and commerce. When the state allowed the same to be leased, that wharves, docks, and other structures might be placed thereon, and platted the same, leaving these open ways of water, it affirmed, as positively as the will of the people can be expressed, that such streets should be water streets or waterways, unobstructed by wharves, docks, and structures of like character, and that they should be open to the whole public. Not to any individual or *quasi* public corporation, or to be put to a particular use by either. Otherwise it would have leased the area so included for the erection of such structures, as it had the undoubted right to do. For the property being that of the state, it might, if it had seen fit to do so, have provided that the city of Seattle, because of its municipal character and the commerce coming to it, should have the right to erect any structure of any character on any part of the reserved area designated and set aside for its use. But it has not done so. Therefore, the questions of policy that are raised and discussed in the majority opinion are legislative questions, and, in the absence of an affirmative grant on the part of the legislature, should not be held to control our judgment.

Another error is that the majority assume that if their decision were otherwise, appellants might have an exclusive right to use the street. But this is not so. The street being an open waterway, they can land vessels at their abutting

dock and keep them there while loading or unloading. When this work is done, the vessel must proceed on its way or find anchorage elsewhere. And yet, although the rights of the appellants and the city are equal and neither one has a right over the other, this court has nevertheless said that the city may so exercise its license in the property of another, which in terms has been forever reserved to the public, that it destroys the use of it to an adjoining proprietor and defeats the object of the constitutional reservation. The policy of the state to reserve waterways has been so clearly manifested in the several legislative enactments, particularly the act of 1897, wherein it changed the streets so as to make them run at an angle to the upland streets, that it seems almost impertinent for a court to hold that any party, private or *quasi* public can erect permanent structures or eventually fill up at its will its reserved water streets, and thus eventually devote them to exclusive uses. If the legislature has power to do as it pleases with the state's property, it has made no grant to the city, and for its omissions we are not to be held answerable. It is truly unfortunate that the constitution makers and the several legislatures used the word "streets" in the constitution and in the harbor area statutes; for, notwithstanding the fact that the title is in the state, and that the reserved area is, and for all time must be, water and not land, this court has given to the term that meaning which attaches to the country highway threading through the village, and the streets of the city which are admittedly under the jurisdiction and subject to the will of city councils.

MOUNT, J., concurs with CHADWICK, J.