[No. 45774. En Banc. October 4, 1979.]

DONALD C. KNAPPETT, ET AL, *Petitioners*, v.
EDWARD M. LOCKE, ET AL, *Respondents*.

*Schweppe, Doolittle, Krug, Tausend & Beezer* and
*Alfred J. Schweppe,* for petitioners.

*Helsell, Fetterman, Martin, Todd & Hokanson* and *William A. Helsell,* for respondents Locke.

*Evans & Quimby, Inc., P.S.,* and *Thomas C. Evans,* for respondent Lake Forest Park.

WRIGHT, J.—The question here is whether a house is a 2–story building with basement or a 3–story building. The

answer depends upon the manner in which "grade" is defined.

In December 1975, the respondent, Western Home Builders, Inc., was employed to build a dwelling house for respondents Locke; on December 29, 1975, Western applied for a building permit from the City of Lake Forest Park. The permit application and the permit (No. 394) erroneously stated the permit was for a 3–story house with a basement. The Lake Forest Park ordinances provided for no more than 2 stories and 30 feet in height. Based upon the language of the application and permit the petitioners started an action and obtained a temporary injunction prohibiting construction of the proposed building. A bond in the sum of $1,000 was required as a condition for the temporary injunction.

Thereafter the temporary injunction was dissolved by agreement of the parties. It also was agreed that respondents' damages, if any damages were allowed, would be $1,000, the face amount of the injunction bond.

Respondents Locke and Western applied for and obtained a new building permit (No. 398) which authorized a 2–story building with a basement.

Originally, petitioners claimed that the building exceeded both the 30–feet and the 3–story limitations. Subsequently, the claim of exceeding 30 feet was abandoned; petitioners rely solely on the claim the building is more than the 2–story maximum. It is, therefore, necessary to consider only that contention.

The trial court found in favor of respondents (defendants) and dismissed the complaint. The trial court also granted judgment for respondents on the injunction bond. The Court of Appeals affirmed.

In 1974 Lake Forest Park enacted ordinance No. 214 which defined the words "grade", "story" and "basement". An ordinance a year earlier, No. 204, defined "grade" but did not define "story". The same result is reached using either definition of "grade".

The definition contained in ordinance No. 214 is:

GRADE (Adjacent Ground Elevation) is the lowest point of elevation of the finished surface of the ground, paving or sidewalk within the area between the building and the property line, or when the property line is more than 5 feet from the building, between the building and a line 5 feet from the building.

UBC § 408.

■ Petitioners rely upon that provision in contending "grade" is the *one* lowest point anywhere around the building and within 5 feet thereof. That interpretation produces absurd results and ignores other language in the ordinance. It is a rule of construction that a statute or ordinance is not construed so as to reach an absurd result. *Yakima First Baptist Homes, Inc. v. Gray,* 82 Wn.2d 295, 301, 510 P.2d 243 (1973); *Lenci v. Seattle,* 63 Wn.2d 664, 671, 388 P.2d 926 (1964); *In re Horse Heaven Irr. Dist.,* 11 Wn.2d 218, 226, 118 P.2d 972 (1941). Every part of an act should be given effect if possible. *State ex rel. Wilson v. King County,* 7 Wn.2d 104, 108, 109 P.2d 291 (1941); *McKenzie v. Mukilteo Water Dist.,* 4 Wn.2d 103, 112, 102 P.2d 251 (1940); *Chlopeck Fish Co. v. Seattle,* 64 Wash. 315, 322–23, 117 P. 232 1911).

ABSURD RESULT. The possibility of an absurd result is great from using the one lowest point anywhere in the area adjacent to the building. If an outside entrance into the basement exists that entrance extends to the basement floor and, thus, probably more than 6 feet below the basement ceiling. This situation results in a basement being classified as a "story" even if the basement is otherwise almost wholly underground. A similar situation exists if there is an excavation to admit light and air to a basement window. These results obviously were not intended in the enactment of ordinance No. 214.

GIVING EFFECT TO THE ENTIRE ENACTMENT. Other language in the ordinance is ignored and given no effect if the meaning advocated by petitioners is adopted. "Story" is defined in part at Uniform Building Code § 420 as:

that portion of a building included between the upper surface of any floor and the upper surface of the floor next above . . . If the finished floor level directly above a basement, cellar or unused under–floor space is more than 6 feet above grade as defined herein for more than 50 percent of the total perimeter or is more than 12 feet above grade as defined herein at any point, such basement, cellar or unused under–floor space shall be considered as a story.

If petitioners' construction is adopted, the 50 percent and 12–feet provisions become meaningless and superfluous.

The correct meaning of "grade" is stated by the Court of Appeals:

There is a more realistic reading of "grade": each point along the outside of a building has its own "grade," which is the lowest point of elevation, along a line running perpendicular to the side of the building, on the building lot within 5 feet of the building. Just as there is an infinite number of points on the outside of a building, so is there an infinite number of "grades," one for each point on the building. To determine whether a basement is a "story," one measures the distance between the finished floor level directly above the basement and the "grade" *that corresponds to that particular point on the outside of the building.* Then one moves to another point along the outside of the building, and measures the distance, *at that point,* between the finished floor level and the "grade" that corresponds to *that* particular point on the outside of the building. After this is done around the total perimeter of the house, it can be determined whether the floor level directly above the basement is more than 6 feet above grade *for more than 50 percent of the building's perimeter.*

*Knappett v. Locke,* 19 Wn. App. 586, 590–91, 576 P.2d 1327 (1978).

 As to the Lockes' counterclaim for damages resulting from the temporary injunction, the trial court was correct. We adopt the Court of Appeals analysis:

The Knappetts, who were required by the court, pursuant to RCW 7.40.080 and CR 65(c), to post a $1,000 bond in order to obtain the February 5 temporary injunction, argue that the injunction was rightfully issued because

the first building permit, on its face, was for a 3–story house. True, it was, but the test is not whether the injunction was erroneous on its face, but whether it is later determined that the restraint was erroneous in the sense that it would not have been ordered had the court been presented all of the facts. *Swiss Baco Skyline Logging Co. v. Haliewicz*, 14 Wn. App. 343, 541 P.2d 1014 (1975). When all of the facts were made known at the trial, the first permit, purporting to describe a 3–story house *plus a basement*, was obviously the result of a clerical error, and the trial court so found. The judgment in favor of the Lockes constitutes a finding that they were "wrongfully enjoined or restrained." CR 65(c).

*Knappett v. Locke, supra* at 592.

In sum, a defendant ultimately prevailing may recover reimbursement for any damages caused by a temporary injunction granted upon a mere prima facie showing. A determination that a temporary injunction was properly granted does not necessarily preclude liability on the bond. *Palace Pharmacy, Inc. v. Gardner & Guidone, Inc.*, 164 Ind. App. 513, 515, 329 N.E.2d 642, 644 (1975).

For the reasons stated, the trial court and the Court of Appeals are affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied December 26, 1979.