Leon H. SAUNDERS; Robert Felton; Saunders Land Investment Corporation, a Utah corporation; White Pine Ranches, a Utah general partnership; and White Pine Enterprises, a Utah general partnership, Plaintiffs and Appellants,

v.

John C. SHARP and Geraldine Y. Sharp, Defendants and Appellees.

John C. SHARP and Geraldine Y. Sharp, Counterclaim–Plaintiffs and Appellees,

v.

Robert FELTON; Leon H. Saunders; Saunders Land Investment Corporation; White Pine Ranches; White Pine Enterprises, Counterclaim–Defendants and Appellees,

and

Kenneth R. Norton, d/b/a Interstate Rentals, Inc., Counterclaim–Defendant and Appellant,

and

Commissioner of Financial Institutions, receiver for Tracy Collins Bank and Trust Company, Surety and Appellant.

Nos. 880710–CA, 880711–CA.

Court of Appeals of Utah.

May 25, 1990.

Rehearing Denied June 26, 1990.

Stanford B. Owen, Patrick L. Anderson (argued), Fabian & Clendenin, Salt Lake City, for surety and appellant.

Robert M. Anderson (argued), Glen D. Watkins, Mark R. Gaylord, Hansen & Anderson, Salt Lake City, for plaintiffs and appellants Saunders, Felton, and White Pine.

Donald J. Winder (argued), Kathy A.F. Davis, Tamara K. Prince, pro hac vice, Winder & Haslam, Salt Lake City, for defendants and appellees.

John B. Anderson, Anderson & Holland, Salt Lake City, for Norton.

David L. Gladwell, Ogden, for plaintiff and appellant, Estate of Rees.

Before BENCH, GREENWOOD and LARSON, JJ.[1]

## OPINION

BENCH, Judge:

Plaintiffs appeal from a judgment in favor of defendants in an action for breach of contract and slander of title. Plaintiffs also appeal the district court's determination that a temporary restraining order was

---

**1.** John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1989).

wrongfully issued, entitling defendants to damages from injunction bonds posted by, and on behalf of, plaintiffs. We affirm the judgment on the contract, but reverse the award of damages against the injunction bonds.

This dispute arises from the sale of approximately 60 acres of land near Park City, Utah, owned by John C. and Geraldine Y. Sharp ("sellers"). Plaintiff White Pine Ranches, a general partnership consisting of Leon H. Saunders, Robert Felton, Kenneth R. Norton, and Paul H. Landes ("buyers"), purchased the property on July 16, 1981, for the purpose of constructing a "Planned Unit Development" (PUD)[2] of four- or five-acre lots and an internal roadway. Buyers paid $620,000 down on a total purchase price of $1,583,055.30, and executed a trust deed and note providing for equal annual installment payments of $192,611.06 on the balance due.

An "Offer to Purchase" and "Memorandum of Closing Terms" were also executed (hereafter referred to as the "contract"), and included the following provisions: (1) upon receipt of the down payment and recordation of a "PUD Plat and Declaration of Covenants, Conditions and Restrictions," three lots of buyers' choice together with the internal roadway connecting the lots to the county road would be released from the trust deed; (2) after recordation and upon receipt of each $140,000 in principal, one PUD lot of buyers' choice would be released from the trust deed; (3) sellers would grant Summit County a strip of land to widen the county road, or, if the road was shown to be inaccurately platted, to grant to the county the road as it existed; (4) sellers would warrant marketable title subject only to easements and reservations of record; (5) buyers would provide sellers with a water and sewer connection at a pro rata cost, at such time as the connections became available; (6) buyers would sell 50 acre-feet of irrigation water to sellers for the discounted cost of $100,000 cash; (7) buyers would be responsible for all taxes and assessments after assuming possession of the premises; (8) failure to make the annual installment payments within thirty days of the annual anniversary date would constitute a default; and (9) in the event of a breach or default, the defaulting party would pay all expenses, including reasonable attorney fees, incurred in enforcing any obligation or right under the contract.

Buyers made installment payments in 1982, 1983, 1984, and a partial payment in 1985. Buyers also made certain improvements to the property and the internal roadway at a cost of over a million dollars, funded in part by a construction loan from Tracy Collins Bank & Trust Company ("Tracy Collins"). On or about November 23, 1983, sellers executed a "Consent to Record" with respect to buyers' plat describing "Phase I" of the project, which involved six lots and the roadway. The plat and a "Declaration of Protective Covenants" were officially recorded on December 23, 1983. The plat indicated that the internal roadway was to be private, in contravention of sellers' intent to have the roadway dedicated to public use.

Although sellers requested the trustee on January 18, 1984, to release and reconvey lots 1 through 5, no mention of the roadway was made, and no reconveyance was recorded until March 28, 1986. Meanwhile, property taxes for lot 6 and the unplatted property became due on November 30, 1984. Of the $4,725 assessed for taxes, buyers paid only $1,515.24. Buyers also paid only a portion of the installment payment due in June 1985.

Sellers subsequently recorded a notice of default on September 16, 1985, and gave notice of a trustee's sale of lot 6, the internal roadway, and all the unplatted property. Buyers filed this action on September 4, 1986, the day before the scheduled trustee's sale, and were granted an order temporarily restraining the sale. The initial temporary restraining order required a cash bond in the amount of $2,400, which buyers posted. The parties thereafter stipulated

---

**2.** "Planned unit development" is generally defined as a private residential development on acreage of certain minimum size, usually large enough to constitute a new community. *See Stevens v. Essex Junction Zoning Bd.,* 139 Vt. 297, 428 A.2d 1100, 1103 (1981).

to an injunction pending trial, and the district court imposed a $50,000 injunction bond. The bond was posted by Tracy Collins acting as surety for buyers, in an attempt to protect its security interest on the construction loan issued to buyers.

In their complaint, buyers sought specific performance of certain obligations under the contract, specifically, the release of lot 6, the internal roadway, and 7.35 acres of the unplatted property. Buyers also sought damages arising from sellers' alleged breach of contract. Sellers counterclaimed, asserting that buyers had breached the contract. They sought dissolution of the injunction, damages for its wrongful issuance, an order of judicial foreclosure on the property, and recovery on the trust deed note.

A bench trial was held on January 28–29 and March 22–25, 1988. The trial court held that buyers had materially breached the contract by failing to pay property taxes on lot 6 and the unplatted acreage, and by failing to satisfy their 1985 and 1986 installment obligations. The court further held that the contractual breach occurred before any alleged breach by sellers, and that further performance by sellers was excused after buyers' breach. Buyers also failed to request release of lots until after their own breach had already occurred, facts which the court believed affected the credibility of buyers' claims. In contrast, sellers were found to have substantially complied with the terms of the contract, and that the recordation of the Declaration of Protective Covenants and the Consent to Record constituted a release of the roadway. Judgment was entered for sellers in the amount of $759,415.63. This amount included $144,088.75 in attorney fees, which were awarded under the terms of the trust deed and note and the contract.

After finding that buyers had breached the contract, the trial court determined that the temporary restraining order against sellers had been wrongfully issued. The court then determined that the appraised fair market value of the property upon which sellers were entitled to foreclose was $728,445. That sum was deducted from the total judgment, leaving sellers undersecured in the amount of $30,970.63. The court awarded sellers that amount against the bonds by entering judgment on the $2,400 cash bond, in full, and $28,570.63 against the bond posted by Tracy Collins. The court also determined that four percent of the attorney fees incurred in defense of the lawsuit could be attributed to defending against the wrongfully issued injunction, and awarded attorney fees against the bonds in the amount of $5,763.55. Buyers and the surety have brought this consolidated appeal to challenge the respective judgments against them.

We first consider the appeal brought by buyers, who argue that the trial court erred in concluding that they, not sellers, breached the contract. Buyers claim entitlement to specific performance and damages, and argue that sellers are precluded from recovering attorney fees. Buyers also claim that the trial court erred in concluding that they granted to sellers an easement over the roadway and that the temporary restraining order had been wrongfully issued.

## BREACH OF CONTRACT

At the conclusion of trial, the court made oral findings encompassing eight transcribed pages. Thereafter, the court issued its judgment accompanied by 104 separate findings of fact. Buyers' brief lists over two pages of issues and subissues. Although buyers state that "the issues presented in this appeal are questions of law reviewable by an appellate court for correctness," we conclude, after scrutinizing those issues, that buyers are essentially challenging the trial court's findings of fact.

■ Buyers argue that sellers breached the contract by failing to make all the required reconveyances and that this breach was never excused by buyers' failure to make specific requests for those releases. Buyers also dispute the trial court's finding that the evidence "established that the parties by both mutual intent and agreement granted to the Defen-

dants the use of the roadway." Buyers further contest the finding that sellers substantially performed their obligations under the contract. All of these "legal issues," however, strike at the trial court's determination of whether there was a material breach of contract, and if so, when, and by whom. Such questions constitute issues of fact for the fact finder. *See Sjoberg v. Kravik*, 233 Mont. 33, 759 P.2d 966, 969 (1988); *Wasserburger v. American Scientific Chem., Inc.*, 267 Or. 77, 514 P.2d 1097, 1099 (1973) (en banc); *see also American Petrofina Co. v. D & L Oil Supply, Inc.*, 283 Or. 183, 583 P.2d 521, 528 (1978) (substantial performance under a contract is a question of fact).

■ Our standard for overturning factual findings is a rigorous one—we may not set aside such findings unless they are clearly erroneous. *Sweeney Land Co. v. Kimball*, 786 P.2d 760, 761 (Utah 1990); Utah R.Civ.P. 52(a). To establish clear error, "[a]n appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' . . . ." *In re Bartell*, 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). This burden "is a heavy one, reflective of the fact that we do not sit to retry cases submitted on disputed facts." *Id.* at 886. Accordingly, when an appellant fails to carry its burden of marshaling the evidence, "we refuse to consider the merits of challenges to the findings and accept the findings as valid." *Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551, 553 (Utah Ct.App.1989).

■ We are thus obliged to consider the findings from the standpoint of the supporting evidence and not from "appellant's view of the way he or she believes the facts should have been found." *Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987). Since buyers have not marshaled the evidence in support of those findings, but merely argue that there is evidence contradicting them, they have failed to demonstrate that the findings are against the clear weight of the evidence. We must therefore accept the findings as valid and affirm the judgment.

## ATTORNEY FEES

■ With respect to the award of attorney fees, "the court may award reasonable fees in accordance with the terms of the parties' agreement." *Cobabe v. Crawford*, 780 P.2d 834, 836 (Utah Ct.App.1989) (quoting *Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) (per curiam)). Although the interpretation of unambiguous contractual terms is a question of law to which the trial court's ruling is afforded no particular deference on appeal, *Wilburn v. Interstate Elec.*, 748 P.2d 582, 584–85 (Utah Ct.App. 1988), *cert. dismissed*, 774 P.2d 1149 (Utah 1989), when those terms are determined to provide for an award of attorney fees, they are to be "awarded as a matter of legal right." *Cobabe*, 780 P.2d at 836 (quoting *Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1985)).

■ The contract provides that "the defaulting party shall pay all expenses of enforcing the same or any right arising out of breach or default thereof, including reasonable attorneys' fees, whether incurred with or without suit and both before and after judgment." We conclude, as the trial court implicitly did, that this provision is unambiguous. Based on the court's determination that buyers breached the trust deed, trust deed note, and the contract, the trial court properly ruled that sellers were entitled to their attorney fees reasonably incurred. *See, e.g., Dixon v. Stoddard*, 765 P.2d 879, 881 (Utah 1988).

■ The amount of such an award is within the trial court's discretion, *Cobabe*, 780 P.2d at 836, but must be reasonable, *Canyon Country Store v. Bracey*, 781 P.2d 414, 420 (Utah 1989), and supported by adequate evidence. *Barnes v. Wood*, 750 P.2d 1226, 1233 (Utah Ct.App.1988). At the court's instruction, sellers' counsel submitted an affidavit and supporting documents as evidence of reasonableness. We perceive no abuse of discretion in the trial court's determination that this affidavit,

never rebutted, was sufficient to support an award of fees. *See id.; see also Freed Fin. Co. v. Stoker Motor Co.,* 537 P.2d 1039, 1040 (Utah 1975).

### THE INJUNCTION BONDS

■ The Commissioner of Financial Institutions ("Commissioner"), as receiver for Tracy Collins, appeals the judgment against the injunction bonds. The Commissioner seeks to avoid liability by arguing for the first time on appeal that the posting of the surety bond was an ultra vires act by Tracy Collins.

Although issues not raised below cannot generally be considered on appeal, *see James v. Preston,* 746 P.2d 799, 801 (Utah Ct.App.1987), the Commissioner urges us to create an exception to this rule under the theory of "adverse domination." This theory provides that as long as a corporation is controlled or "dominated" by wrongdoers against whom a cause of action exists, the statute of limitations is tolled because the wrongdoers cannot be expected to bring an action against themselves. *Federal Deposit Ins. Corp. v. Hudson,* 673 F.Supp. 1039, 1042 (D.Kan.1987).

Because Tracy Collins did not have the power to act as a surety, the Commissioner alleges, the bank's officers would have been subjected to liability had they asserted the ultra vires claim at trial. Therefore, so the argument goes, the Commissioner, as receiver, should now be permitted under the theory of adverse domination to assert the claim of ultra vires on appeal.

Although there are exceptions to the rule prohibiting consideration of issues for the first time on appeal, they are few in number. *See State v. Webb,* 790 P.2d 65, 75–80 (Utah Ct.App.1990) (e.g., exceptional circumstances, plain error, liberty interests). It appears that such exceptions are to be applied only when gross injustice resulting from application of the rule overwhelms its purpose—that being to correct errors at trial, avoiding "a merry-go-round of litigation." *Bundy v. Century Equip. Co.,* 692

P.2d 754, 758 (Utah 1984) (quoting *Simpson v. General Motors Corp.,* 24 Utah 2d 301, 303, 470 P.2d 399, 401 (1970)).

The Commissioner has brought to our attention no exceptional circumstance to support the carving out of yet another exception to the rules of appellate review. Although the Commissioner urges us to adopt its approach by noting that it was not a party below, buyers were likewise deprived of the opportunity to submit the ultra vires issue to the trial court and have it resolved without the necessity of this appeal. Since the Commissioner offers no authority for extending the theory of adverse domination beyond the limitation of actions against corporate wrongdoers, and we see no other reason to do so, we decline to consider its claim of ultra vires. *Accord Wallace Bank & Trust Co. v. First Nat'l Bank,* 40 Idaho 712, 237 P. 284, 287 (1925) (ultra vires may not be asserted for the first time on appeal).

■ We next address the Commissioner's claim that the trial court improperly awarded attorney fees incurred in resisting the temporary restraining order. The trial court accepted sellers' calculation that four percent of their total attorney fees of $144,088.75 were spent defending against the "injunction."[3] The trial court then awarded $5,763.55 of those fees against the bonds.

Utah R. Civ.P. 65A(c) provides that:

Except as otherwise provided by law, no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

■ Our supreme court has determined that "damages" subject to recovery under this rule include the attorney fees of the party wrongfully enjoined. *Mountain States Tel. & Tel. Co. v. Atkin, Wright &*

---

**3.** The reference to an "injunction" appears to refer to both the temporary restraining order

and the stipulated preliminary injunction.

*Miles, Chartered,* 681 P.2d 1258, 1262 (Utah 1984). We have since extended that recovery to attorney fees incurred as the result of a wrongfully issued temporary restraining order. *See Beard v. Dugdale,* 741 P.2d 968, 969 (Utah Ct.App.1987). When attorney fees are incurred in defending against wrongfully obtained injunctive relief and also against an underlying lawsuit, it is appropriate to determine how much of the total fees are attributable to resisting the injunction. *See id.; see also Artistic Hairdressers, Inc. v. Levy,* 87 Nev. 313, 486 P.2d 482, 484 (1971) (only the attorney fees directly related to dissolution of the wrongful injunction are recoverable). We therefore affirm the trial court's award of attorney fees against the bonds.

 We last address the Commissioner's argument that the trial court used an incorrect measure in awarding damages under Rule 65A(c) against the injunction bonds. The trial court calculated damages by adding principal ($371,739.35), interest ($203,664.50), late fees ($14,869.57), taxes ($20,368.62), attorney fees ($144,469.75), trustee's fees ($1,803.80), and costs ($2,881.04) for a total of $759,796.63. The court next considered the testimony at trial of a real property appraiser who determined that the fair market value of the unconveyed property was $17,500 to $20,000 per acre at the time the temporary restraining order was imposed. The trial court then found that the value of the property on the date of judgment was $20,000 per acre, totalling $728,445.00. Since the value of the property as collateral was less than the total judgment, the trial court found that buyers were undersecured and awarded the difference ($30,970.63) as damages for the wrongfully issued injunction.

The Commissioner claims that this calculation was erroneous, and asserts that the correct measure of damages is "the reduction or diminution in the value of the security during the period of restraint." *Glens Falls Ins. Co. v. First Nat'l Bank,* 83 Nev. 196, 427 P.2d 1, 4 (1967). *See also Global Contact Lens, Inc. v. Knight,* 254 So.2d 807, 809 (Fla.Dist.Ct.App.1971). We agree. Although sellers were restrained from foreclosing the property for approximately two years, they retained both the trust deed note and the unconveyed property during that time. The trial court found that the value of the property did not diminish in those two years. Any measure of damages other than a comparison of the fair market value of the property before and after the injunction is thus incorrect.

Sellers argue, however, that buyers' argument ignores the concept of "present value." They contend that the award of interest under the judgment is inadequate, under the assumption that they would have had available the interest earning capacity of the foreclosure sale proceeds had the sale been held as scheduled. Alternatively, they suggest that an appraisal showing the value of the property in 1988 to be the same as that in 1986 actually represents a decrease in value when the effect of inflation is taken into account. Aside from the speculative nature of such claims, sellers' interest losses on the trust deed note were taken into consideration and awarded as part of the total judgment. Interest was awarded at the rate of twelve percent on the unpaid principal, eighteen percent on the payments in default, and also included a four percent late payment charge. Surely those charges more than compensated sellers for the interest-bearing potential of money or the effects of inflation during the two-year period.

In any event, the Commissioner is correct in asserting that "recoverable damages under such a bond are those that arise from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction." *Beard,* 741 P.2d at 969 (quoting *Lever Bros. Co. v. International Chem. Workers Union,* 554 F.2d 115, 120 (4th Cir.1976)). On that basis, the interest accrued on the trust deed note during the delay in the sale of the property may be awarded in the judgment, as was done in this case, but cannot also be attributed as damages under the injunction bond. *See Glens Falls,* 427 P.2d at 4. Since sellers did not demonstrate any damages attributable to the imposition of the injunction other than a portion of their attorney fees, the award of

damages against the bonds must be reversed.

In summary, we affirm the judgment on the contract. We reverse the award of damages against the injunction bonds, except for the attorney fees. Such fees are to be assessed against the bonds in a proportion to be determined by the trial court.

Affirmed in part, reversed in part, and remanded. No costs awarded.

GREENWOOD and LARSON, JJ., concur.