**Raymond W. THOLEN, Plaintiff, Appellant, and Cross– Appellee,**

v.

**SANDY CITY and Southridge Industrial Park Special Improvement District, Defendants, Appellees, and Cross–Appellants.**

**No. 920445–CA.**

Court of Appeals of Utah.

March 8, 1993.

John Walsh (argued), Salt Lake City, for plaintiff, appellant.

Gregory M. Simonsen (argued), Fetzer, Hendrickson & Simonsen, Salt Lake City, for defendants, appellees.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Appellant, Raymond Tholen, contests the trial court's summary judgment affirming the assessment of his property, allowing foreclosure of his property, and awarding attorney fees against him, while Sandy City and Southridge Industrial Park Special Improvement District (sometimes referred to collectively herein as "Sandy") appeal the trial court's reduction of their attorney fees request. We affirm the summary judgment, but remand for reconsideration of the attorney fees award.

## FACTS

Raymond Tholen owned an undivided interest in approximately nineteen acres as tenant in common with two other people, not parties to this action. Tholen and a real estate developer agreed to a joint venture in order to develop his land as part of a planned industrial park. The developer petitioned Sandy City to designate the area as a special improvement district so that Sandy could finance improvements to the property, including road, gutter, sewer, and landscaping, through the sale of bonds. The developer proposed that the bonds would be repaid through assessments on the property in the development. On February 2, 1982, the Sandy City Council created the requested special district, which was named Southridge Industrial Park Special Improvement District. Shortly thereafter, in order to expedite the project, the developer and the affected property owners, including Tholen, signed a waiver of their right to have a board of equalization convened [1] and in the same document consented to a schedule of assessments. According to the waiver and consent, the total assessment amounted to $1,203,508.79, of which Tholen was to be assessed $87,012.48. On May 10, 1983, without convening a board of equalization, the Sandy City Council adopted an ordinance assessing all property owners according to the amount of land each owner had that fronted the planned parkway through the development. Tholen's assessment was exactly the same as the one contained in the waiver and consent he signed: $87,012.48, corresponding to 666.6 linear feet of parkway frontage attributed to him.[2] The assessment was due in ten equal annual installments.

After the creation of the special district, Tholen and his two co-owners divided their previously undivided property into separate parcels and recorded a deed reflecting the

---

1. Utah Code Ann. § 17A–3–317 (1991) provides that after an assessment list is completed and before an assessment is levied, the governing body shall appoint a board of equalization to hold hearings in order that property owners have a forum to voice complaints about their assessments. In the typical situation, a governing body prepares an assessment list containing a designation of each parcel to be assessed and the amount to be assessed against each parcel. Each property owner is notified and a board of equalization is convened for public hearings. In this case, however, the property owners agreed to the assessments before the Sandy City Council approved them, thereby alleviating the need for a board of equalization to hear complaints from property owners who felt the assessments were unfair.

2. The total amount of assessments for the entire special district was $1,203,508.79 and the entire frontage was 9,221 feet. Tholen and his two co-owners owned property accounting for approximately thirty-five percent of the entire frontage along the proposed parkway in the special district. At the time of the assessment, Tholen himself owned a twenty-one percent undivided share of that commonly owned property. Thus, Tholen was assessed for 7.3% of the entire cost for the improvements, or $87,012.48. Correspondingly, 7.3% of the total frontage equates to 666.6 linear feet.

division on December 30, 1983. Tholen's divided interest consisted of two parcels, one which fronted the parkway for approximately 262 linear feet, and another which contained no frontage.

Tholen became delinquent on his payments, and on March 17, 1988, Sandy filed a notice of default to initiate foreclosure proceedings on his property. On May 27, 1988, Tholen filed a complaint challenging Sandy's assessment and about two weeks later filed a motion for a preliminary injunction to enjoin the foreclosure action. The thrust of Tholen's complaint was that the initial 1983 assessment for 666.6 linear feet was incorrect in that he owns property with only 262 linear feet of frontage. At the initial hearing on the injunction and on Sandy's motion for summary judgment, the district court granted a preliminary injunction, ruled that the consent and waiver effectively waived the need for a board of equalization, and granted partial summary judgment in favor of Sandy, pending resolution of the sole issue of who owned what property at the time of the initial assessment. On January 10, 1991, after reviewing additional memoranda and affidavits, the court ruled that Tholen had been properly assessed at the time of the initial assessment and granted summary judgment in Sandy's favor.

## I. PROPRIETY OF SUMMARY JUDGMENT

■ Tholen appeals the district court's summary judgment in favor of Sandy. Because summary judgment is based solely on the court's legal conclusions in view of undisputed facts, we review the trial court's decision for correctness without deference to the court's conclusions. *Smith v. Batchelor*, 832 P.2d 467, 470–71 (Utah 1992).

■ The determinative issue in the case before us is whether Tholen, in waiving his right to have a board of equalization convened, waived his right to protest his assessment. Tholen's argument that he did not do so is wholly untenable and may be dealt with summarily.

Tholen argues that Sandy levied an assessment against his property in violation of Utah Code Ann. § 17A-3-317(2)(a)(i) (1991), which states in part that "[u]pon completion of the assessment list, the governing body shall ... appoint a board of equalization." One purpose of a board of equalization is to provide a forum for persons who believe themselves aggrieved concerning the amount of a proposed assessment against a tract of land. Utah Code Ann. § 17A-3-317(5) (1991). Tholen contends that the mandatory wording of the statute required Sandy to convene a board of equalization for the special district assessments in question here, regardless of the fact that all the landowners in the special district, including Tholen, signed a waiver and consent that included the following language, which we quote verbatim notwithstanding some grammatical imprecision:

1. The Owners hereby waive the right to have appointed by Sandy City, a Board of Equalization and Review which would hear aggrieved property owners and recommend adjustments in assessments, if deemed appropriate. The Owners further waive the right to a hearing before a Board of Equalization and Review and the right to appeal from any determination of a Board of Equalization and Review.

2. Owners consent to the levy of assessments by the City Council in accordance with the following schedule of estimated assessments for specific property owners is approved.

Not only did Tholen and the other landowners sign the waiver and consent agreement, but, at oral argument before this court, all parties agreed that the landowners and developer, not Sandy, suggested the waiver and consent in order that their development project could be expedited as quickly as possible. Affidavits in the record and language in the consent and waiver agreement are consistent with this representation.

The Sandy City Council obliged the landowners, and adopted an ordinance assessing the owners in accordance with the consent and waiver. Tholen's argument that Sandy should have convened a board of

equalization is especially disingenuous because even if such a board had been convened, Tholen, given the consent and waiver, would have been contractually precluded from seeking a hearing before the board. Moreover, Tholen's belated objection to the assessment, namely that his property now has much less frontage along the parkway than his assessment reflects, results solely from the partition accomplished by Tholen and his co-owners several months *after* the Sandy City Council approved the very assessment scheme agreed to by the landowners.

Tholen's complaint, which came more than five years after the Sandy City Council adopted the assessment ordinance[3] and after Sandy completed the promised improvements, seeks to overturn an agreement that all other parties to the transaction have relied upon. In order to address Tholen's claim to his satisfaction, Sandy would have to create a new assessment formula to pay for the bonds that it issued at the request of Tholen and the other landowners. It would be patently unfair to force Sandy to start the assessment process over now, after it issued the requested bonds, performed the improvements for the special district, and reasonably relied upon the waiver and consent as well as the action—or more appropriately, inaction—of the landowners in the district. Further injustice would result if higher assessments on the other landowners were imposed to compensate for any reduction in Tholen's assessment. The other owners have, for several years, relied upon the assessments imposed by Sandy in accordance with their agreement. Such increased assessments would also leave Sandy subject to breach of contract claims by the landowners who found their assessments increased above what had been agreed to. We therefore hold that Tholen's complaint comes far too late and that he waived his right to protest Sandy's assessment upon signing the waiver and consent.[4]

## II. ATTORNEY FEES

Tholen challenges the trial court's award of any attorney fees to Sandy. In turn, Sandy contends that the trial court appropriately awarded attorney fees, but that it improperly reduced the award from the requested $44,496.50 to $28,342.50. Sandy justifies the court's award of attorney fees on the basis of Utah Code Ann. § 17A–3–322 (1991) and Utah R.Civ.P. 65A(c)(2).

■ Section 17A–3–322, with our emphasis, provides in part:

(1) When an assessment is payable in installments and a default occurs in the payment of any installment when due, the governing body may declare the unpaid amount to be delinquent, immediately due, and subject to collection as provided in this part.... *Costs of collection as approved by the governing body* or required by law *shall be charged and paid on all amounts declared to be delinquent....*

Sandy contends that attorney fees are a cost of collection, and thus the highlighted language above unambiguously mandates

3. Tholen filed his complaint more than four years after he and the other landowners divided their interests in the property.

4. We briefly address Tholen's related argument that the disputed assessment is invalid because it is made against him personally rather than against particular real estate. Tholen's premise is fundamentally flawed. The large parcel initially owned jointly by Tholen and his co-owners would ordinarily have been assessed as a single parcel, with the owners left to determine among themselves how the assessment burden would be shared. Under the terms of the waiver and consent, however, each owner was to be separately assessed according to a specified formula, apparently of the owners' own devising. This did not, however, entail personal liability.

On the contrary, each owner's individual assessment liability constituted a lien on his undivided interest in the property. Upon their partition of the large parcel, their respective undivided real property interests were merely transformed into specific parcels. The character of Tholen's real property changed, but his assessment liability did not, in the process, change from in rem to personal. Just as his specified assessment liability constituted a lien on his undivided interest before partition, it constituted a lien on his divided interest following partition. By the same token, if he now sold his divided parcels to a third-party, the buyer would take the property subject to the lien for the assessment. The assessment would not follow Tholen as a personal obligation.

that any attorney fees incurred by Sandy in this case be awarded. We disagree.

"In Utah, attorney fees are awardable only if authorized by statute or by contract." *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988). Moreover, attorney fees should not be confused with the more generic term "costs" because without specific statutory language, costs do not include attorney fees. *Hicks v. Lloyd's General Ins. Agency, Inc.,* 763 P.2d 85, 86 (Okl.1988); *Lanes v. O'Brien,* 746 P.2d 1366, 1374 (Colo.App.1987). This is especially true in light of many other instances where the Utah Legislature has expressly authorized the award of attorney fees, sometimes explicitly distinguishing fees from costs. *See, e.g.,* Utah Code Ann. § 7–15–1(3)(c) (Supp.1992) (person issuing bad check is liable for "all costs of collection, including all court costs and reasonable attorneys' fees"); Utah Code Ann. § 38–1–17 (1988) (subcontractor enforcing mechanics' lien shall have costs awarded "including ... reasonable attorney's fee"); Utah Code Ann. § 78–27–56(1) (1992) (where action is brought in bad faith "court shall award reasonable attorney's fees to a prevailing party"). In view of the broader context of the Legislature's ability and willingness to single out attorney fees when it intends to authorize their award, we hold that section 17A–3–322 does not authorize the award of attorney fees as part of the "costs of collection" referred to in that provision.[5] Because Sandy based its request for attorney fees on appeal solely on § 17A–3–322, we accordingly deny its request for fees on appeal.

Sandy contends that Utah Rule of Civil Procedure 65A provides an alternative basis for justifying the award of attorney fees below. Rule 65A(c) requires a court to condition issuance of an injunction on the applicant giving security. Subparagraph (2) provides specifically:

> The amount of security shall not establish or limit the amount of costs, including reasonable attorney fees incurred in connection with the restraining order or preliminary injunction, or damages that may be awarded to a party who is found to have been *wrongfully* restrained or enjoined.

Utah R.Civ.P. 65A(c)(2) (emphasis added). The Advisory Committee Note for Rule 65A explains, with our emphasis, that along with other changes made in 1991, "[s]ubparagraph (2) [of Rule 65A] also explicitly allows a *wrongfully* enjoined party to recover attorney fees."

At first blush, the use of the word "wrongfully" appears to imply some degree of morally culpable behavior on the part of the party seeking an injunction. *See Black's Law Dictionary* 1446 (5th ed. 1979). The Utah Supreme Court, however, has held that, as used in the context of Rule 65A " '[w]rongful' does not necessarily connote bad faith or connivance. An injunction is wrongfully issued and recovery on the bond is permissible if it is finally determined that the applicant was not entitled to the injunction." *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered,* 681 P.2d 1258, 1262 (Utah 1984). *See also Blumenthal v. Merrill Lynch,* 910 F.2d 1049, 1054 (2nd Cir.1990) (injunction is wrongful for purposes of Fed.

**5.** While we recognize that in the context of promissory notes, "costs of collection," as a term of art, can be taken to include attorney fees without expressly so stating, *see Black's Law Dictionary* 312 (5th ed. 1979), such an interpretation is inapplicable in the context of statutory interpretation in Utah, especially in light of section 7–15–1(3), which demonstrates the Legislature does not have that understanding. *See* Utah Code Ann. § 7–15–1(3) (Supp. 1992) ("all costs of collection, including ... reasonable attorneys' fees").

Although Sandy makes much of its claim that the words "costs of collection as approved by the governing body" has a different meaning

than the generic term "costs" and that those words provide a clear indication that the Legislature meant for municipalities to collect all approved costs including attorney fees, it fails to refer to any specific instance when the Sandy City Council approved attorney fees, or costs of any sort, in this case. The most it is able to say given the record before us is that "[t]he governing body, the City, at some point 'approved' hiring a law firm as a collection cost under this statute." Even if section 17A–3–322 encompassed attorney fees, the party seeking attorney fees would be required to provide more specific proof of explicit approval by the governing body than that offered by Sandy in this case.

R.Civ.P. 65(c) if "the enjoined party had ... the right to do the enjoined act"); *Knappett v. Locke,* 92 Wash.2d 643, 600 P.2d 1257, 1259 (1979) (under Washington's equivalent of Rule 65A, "determination that a temporary injunction was properly granted does not necessarily preclude liability on the bond" when temporary restraining order applicant subsequently loses on the merits).

▄ Although Rule 65A justifies awarding attorney fees to wrongfully enjoined parties, those parties are only entitled to "fees ... incurred in defending against wrongfully obtained injunctive relief" and not to fees incurred in litigating the underlying lawsuit associated with an injunction. *Saunders v. Sharp,* 793 P.2d 927, 933 (Utah App.1990), *remanded on other grounds,* 806 P.2d 198 (Utah 1991). *See also Beard v. Dugdale,* 741 P.2d 968, 969 (Utah App.1987) (fees incurred preparing and arguing summary judgment were not properly awarded because they were not incurred as a result of the injunction). Thus, in the present case, Sandy is entitled only to those attorney fees which would not have been incurred *but for* the application for, and issuance of, the preliminary injunction. Fees which would have been incurred anyway, in the course of proving Sandy's entitlement to judgment and refuting Tholen's defenses, are not recoverable under Rule 65A.

On remand, the trial court must undertake a two-part evaluation of the evidence offered to support an award of attorney fees and must explain its reasons for awarding a particular sum. First, the court must determine which part of Sandy's fees are directly attributable to the injunction. *See Saunders,* 793 P.2d at 933; *Beard,* 741 P.2d 969.[6] Second, the court must determine whether those fees are reasonable when measured against discernible criteria. Such criteria include, but are not limited to:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?[7]

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Dixie State Bank,* 764 P.2d at 990. *See also Cabrera v. Cottrell,* 694 P.2d 622, 624–25 (Utah 1985); *Bell v. Bell,* 810 P.2d 489, 493–94 (Utah App.1991); *Govert Copier Painting v. Van Leeuwen,* 801 P.2d 163, 173–74 (Utah App.1990).

## CONCLUSION

We hold that Tholen waived his right to challenge Sandy's assessment of his property and accordingly affirm the trial court's summary judgment in favor of Sandy. We remand, however, for the trial court to reconsider the award of attorney fees, in particular to determine which part

---

**6.** In its Affidavit in Support of Award of Attorneys' Fees, Sandy states that the legal work performed in the present case involved "defense of action for rescission of assessments, injunctive relief and for collection of Special Improvement District Assessments owed to the defendants." Although Sandy's fee application lists in some detail the particular services performed, the time allocated to each is apparently not provided. Allocation of fees properly attributable to the injunction may well prove difficult on remand.

**7.** The trial court, in awarding attorney fees to Sandy, stated, without further explanation, that "the Court in its discretion has reduced the defendants' attorneys' fees from $78 an hour to $50 an hour." Consequently, the court awarded Sandy $28,342.50 for attorney fees instead of $44,496.50, which Sandy submitted in its affidavit. Although a trial court has discretion to determine what constitutes reasonable attorney fees for a particular case, its exercise of discretion must be based on evidence in the record. *Dixie State Bank,* 764 P.2d at 988. We have previously held that a judicially initiated reduction of requested fees, without findings to explain why the reduction is justified, is an abuse of discretion. *See, e.g., Bell v. Bell,* 810 P.2d 489, 493–94 (Utah App.1991); *Martindale v. Adams,* 777 P.2d 514, 517–18 (Utah App.1989). On remand and reevaluation by the trial court, the reasons for awarding fees on the basis of an hourly rate less than that requested must be explained.

of the attorney fees were attributable to the preliminary injunction and to explain the basis for its apparently arbitrary reduction of the requested hourly rate.

GREENWOOD and JACKSON, JJ., concur.