919 P.2d 348

**PHOENIX AVIATION, INC., Plaintiff,**

v.

**MNK ENTERPRISES, INC., James Gessford and Jacqueline Gessford, Defendants.**

**MNK ENTERPRISES, INC., Counterplaintiff– Appellant,**

v.

**PHOENIX AVIATION, INC., and Paul A. McShane, Counterdefendants– Respondents.**

No. 21347.

Court of Appeals of Idaho.

May 14, 1996.

Rehearing Denied July 10, 1996.

Johnson Olson, Chtd., Pocatello, for appellant. Charles Johnson III argued.

Howard W. Matthews, Paris, for respondents.

LANSING, Judge.

MNK Enterprises, Inc. appeals from the district court's refusal to allow recovery against the surety on an injunction bond for losses allegedly caused by the wrongful issuance of the preliminary injunction. For the reasons stated below, we affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Resolution of this appeal requires a review of the complex procedural history of this case, which we glean from an appellate record that is sketchy and incomplete. Phoenix Aviation, Inc. (Phoenix) and MNK Enterprises, Inc. (MNK) had been engaged in business dealings. Sometime in 1989, MNK, acting through its president, James Gessford, entered into a contract to sell real and personal property to a third entity, MNK Ltd., Inc. (MNK Ltd.), for a price of $1,000,000.[1] Apparently, MNK Ltd. was to be formed as a Nevada corporation with Gessford and Phoenix's president, Paul McShane, on the board of directors.[2] McShane signed this contract as president of MNK, Ltd. Phoenix was also a party to the agreement as guarantor of MNK Ltd.'s obligations. An exhibit to the contract which apparently identifies the personal property that is subject to the sale was never made part of the record. However, we infer from other information in the record that the contract obligated MNK to develop composite tooling for the production of fiberglass airplane components specific to the construction of the Phoenix Vendetta aircraft manufactured by Phoenix.

In November 1991 a "substitute agreement" was formed. By this substitute agreement and a contemporaneous letter, Phoenix acknowledged that it owed MNK approximately $175,000 for the tooling and for fiberglass parts manufactured by MNK. The substitute agreement set up a schedule of payments to cure this delinquency.

On June 1, 1992, MNK sent Phoenix a "notice of sale" asserting that the scheduled payments had not been made. The notice stated that MNK was cancelling all contracts with Phoenix, MNK Ltd., and Paul A. McShane, and that MNK had "repossessed, foreclosed, and taken possession after default of *all* personal contract rights (including patent rights, the assignment of which is hereby cancelled), personal property, and real property referred to in any of the parties [sic] agreements pursuant to Idaho law." The notice further indicated that, to foreclose liens arising under I.C. §§ 45–805 and 45–

---

1. Although this contract was entered into the record below at least twice by MNK, significant portions of both copies are illegible.

2. In the proceedings below, MNK alleged that MNK, Ltd. was never formed.

806, MNK would conduct a public sale of the property on June 26, 1992, and if no bids were deemed sufficient, that MNK would retain the same in partial satisfaction of the debt.

On June 25, 1992, the day before the proposed sale, Phoenix filed a complaint against MNK, James Gessford and his wife, Jacqueline Gessford, for breach of contract. The complaint included a request for a temporary restraining order, a preliminary injunction, and a permanent injunction preventing the threatened sale. Phoenix alleged that if MNK were allowed to unilaterally revoke and cancel all contracts and conduct the proposed sale, Phoenix would be irreparably damaged in that the tooling and patents necessary to construct its aircraft would be lost. On June 26, 1992, the district court granted Phoenix's *ex parte* motion for a restraining order and scheduled a hearing to determine whether the restraining order would ripen into a preliminary injunction.

Following an evidentiary hearing, the district court granted a preliminary injunction which prohibited MNK, James Gessford and Jacqueline Gessford from selling any of the property that had been listed in MNK's notice of sale.[3] Pursuant to I.R.C.P. 65(c), the court required that Phoenix post a security bond in the amount of $20,000 to cover any damages that might be suffered by MNK if the injunction were later found to be wrongfully issued. Phoenix then filed an "undertaking," and an accompanying affidavit, in which a third party, Donald Hennings, obligated himself as surety for the $20,000 security. MNK filed an objection to this form of security, but no hearing on the objection was requested, and the district court apparently never acted upon it. The form of the security is not challenged on this appeal. Although this undertaking was not in the form of a customary surety bond, we will refer to it herein for convenience as the "bond."

MNK filed a counterclaim and third party complaint seeking damages in excess of $1,000,000 from Phoenix, McShane and others for breach of contract and fraud.

Over the course of the next few months, Phoenix failed to respond to requests for discovery. On November 25, 1992, MNK filed a "Motion for Sanctions and to Dissolve the Injunction." This motion sought dissolution of the preliminary injunction, apparently as a sanction for Phoenix's failure to comply with prior discovery orders.[4] At the hearing on this motion, the parties stipulated that Phoenix would respond to outstanding discovery requests by a specified date, leaving as the only contested matter the request for dissolution of the preliminary injunction. Phoenix's attorney also stipulated that Phoenix then owed MNK a sum of not less than $100,000. There was, however, no stipulation regarding the respective parties' claims to the property that MNK was enjoined from selling. On December 7, 1992, the district court issued an order for Phoenix to complete its discovery responses in accordance with the parties' stipulation. The court further ordered that, "as a sanction for undue delay herein" the preliminary injunction would automatically dissolve on January 16, 1993 unless, prior to that date, Phoenix had settled with MNK all debts then owing in a sum of not less than $100,000 and deposited a $250,000 undertaking with the court in substitution for the $20,000 bond previously filed to secure MNK against damage in the event the injunction were later found to be wrongfully issued.

Three days after the January 16, 1993 deadline, MNK filed a motion asserting that Phoenix had not posted the required replacement bond or made any payment to MNK as required to maintain the preliminary injunction in effect. The motion requested that the court dissolve the preliminary injunction. By order of January 29, the district court confirmed that the preliminary injunction had dissolved automatically on January 16, 1993.

---

3. The transcript of this hearing is not included in the record on appeal.

4. This motion also advised the court that McShane had been indicted in Utah for securities fraud, and a copy of the indictment was attached to the motion. However, there was no showing that the alleged securities fraud was in any way connected to Phoenix's transactions with MNK.

On February 17, 1993, MNK filed a four-part motion titled "Motion to Confirm Sale of Property; Motion for Sanctions Against Plaintiffs Phoenix Aviation and Paul McShane for Failure to Comply with Discovery Requests; Motion for Judgment of Liability on Bond; and Motion for Pre-Trial Conference and Trial Setting." Filed with this motion was an itemization of damages and attorney fees allegedly incurred by MNK as a result of the issuance of the preliminary injunction. The motion was also supported by an affidavit of Gessford, which at one point states in a conclusory fashion that McShane and Phoenix owe Gessford "almost one-quarter of a million dollars," and at another point states that McShane owes Gessford $1,000,000. Two hearings were conducted on the four-part motion. One was an evidentiary hearing on April 16, 1993, set by the court "for [the] purpose of taking testimony in support of [MNK's] position that the injunction was wrongfully issued and that [MNK] has been damaged thereby." During this hearing, Gessford testified concerning damages allegedly suffered by MNK and the Gessfords.

The district court then ruled on MNK's four-part motion as follows. With respect to the motion for sanctions against Phoenix, the court found that sanctions were warranted for failure to comply with discovery orders. The court stated that since other alternatives had been tried and had been ineffective,

the only meaningful sanction, although severe, would be to strike it's (Phoenix's)

Complaint and it's Reply to (MNK's) Counterclaim, enter it's default and allow MNK Inc. to proceed to judgment against it, subject, however, to the giving of proper notice of it's intent to proceed at a given date and time.

The court therefore ordered Phoenix to respond fully to pending discovery requests within twenty-one days and held that, if Phoenix did not comply, its complaint and its answer to MNK's amended counterclaim would be stricken and its default entered.[5]

The court acted upon MNK's motion to confirm the sale of property covered by its June 1, 1992 notice of sale, by holding:

Confirmation of the right of MNK, Inc. to such property for the purpose of resale in commercially reasonable manner and application of any proceed [sic] to the debt claimed owed by Phoenix Aviation, is confirmed subject to being limited to property, if any, lawfully within the limits of I.C. [§§] 45–805 and 45–806.[6]

Regarding MNK's motion requesting a judgment against the surety for liability on the bond, the district court noted that although the preliminary injunction had been dissolved, "there has been no showing whatsoever made to this court that the Preliminary Injunction was wrongfully issued or that they (MNK and the Gessfords) have been wrongfully enjoined or restrained." The district court further stated that even if the injunction was wrongfully issued, the damages sought by MNK were "generally

5. The district court denied the motion for sanctions as against McShane in his individual capacity because he was not a plaintiff and had never been properly brought into the action as a third party defendant, and because MNK's pleadings alleged no conduct attributable to McShane outside his role as president of Phoenix. The claims alleged against McShane, denominated a counterclaim or third party claim, were dismissed with prejudice.

6. Neither the reason for this request for confirmation of the right to sell property, nor the court's authority to give it, is readily apparent. Once the preliminary injunction was dissolved in January 1993, there was no longer any apparent impediment to MNK's power to sell the property in its possession, though MNK remained subject to potential liability for damages sought in Phoenix's complaint. The district court expressed

doubt about the authority for this confirmation procedure, commenting, "Although MNK, Inc. cites no authority ... for either it's right to assert such a lien or it's right to retain the property if not sold, Phoenix Aviation, on the other hand, has not disputed the same by way of filing a brief on its own behalf." The court's order may be no more than a recognition that the preliminary injunction against a sale of the property had been dissolved, so there was no longer judicial restraint on MNK's power of sale. If the district court intended this order to be a rejection of Phoenix's claim for a permanent injunction against sale of the property, it appears to be erroneous, for there had not been a trial, default judgment or summary judgment proceeding from which the court could have resolved the permanent injunction cause of action or the parties' respective claims to the property.

stated and speculative, and not attributable to the effect of any injunction, wrongful or not." Accordingly, the portion of the motion seeking judgment against the surety was denied.

In light of the various dispositions of the above motions, the district court denied MNK's motion requesting the scheduling of a pre-trial conference and trial.

Because Phoenix did not file discovery responses within twenty-one days as ordered, on September 28, 1993, the district court entered an order striking Phoenix's pleadings and entering its default. By the same order, the court scheduled a hearing date of October 15, 1993, for MNK to present factual evidence to establish the liability of Phoenix on MNK's claims and evidence of MNK's damages. This hearing was apparently rescheduled several times and was finally conducted on April 1, 1994. On that date, the district court entered a judgment by default in favor of MNK and against Phoenix in an amount exceeding $1,700,000. The judgment also declared MNK's right to possess certain real and personal property. By a subsequent amended judgment, the court reduced the amount of the award to approximately $1,200,000 and clarified that the monetary award was subject to a set-off for the commercially reasonable value of the real and personal property that was "repossessed" by MNK.

After issuance of the amended judgment, the district court ordered exoneration of the $20,000 surety bond that had been posted by Donald Hennings on behalf of Phoenix. MNK filed no objection or motion to vacate this order.

## II.

### ANALYSIS

The only issue asserted by MNK in this appeal is whether the district court erred in denying MNK's claim against the surety for damages from wrongful issuance of the preliminary injunction, as requested in MNK's February 17, 1993, motion for judgment on

the bond and based upon evidence presented at the April 16, 1993, evidentiary hearing. We conclude that the district court did not err because, at the time that MNK's motion was presented to the district court for decision, there had been no showing that the preliminary injunction was wrongfully issued, nor has there ever been a showing of damages caused by the preliminary injunction.

Under I.R.C.P. 65(c) a preliminary injunction bond is required to give security "for the payment of such costs and damages including reasonable attorney's fees to be fixed by the court, as may be incurred or suffered by any party who is found to have been wrongfully enjoined." The surety's liability may be enforced on a motion filed in the injunction action, without the necessity for an independent action. I.R.C.P. 65(c).

 Generally, an injunction may be deemed to have been wrongfully issued, so as to allow recovery on the bond, only if there has been a final judgment or equivalent determination that the plaintiff was not entitled to an injunction. *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054–55 (2d Cir.1990); *Madison Shipping Corp. v. National Maritime Union*, 204 F.Supp. 22, 23 (E.D.Pa.1962); *Aetna Casualty & Surety Co. v. Bell*, 95 Nev. 822, 603 P.2d 692, 694 (1979). Thus, it has been said that:

> If the summary procedure [for recovery on the bond under corresponding Federal Rule of Civil Procedure 65.1] is to be pursued, the question of when it should be invoked is of importance. The motion will not precede the final determination on the merits. In the case of an injunction bond, the claim against the surety does not accrue until it is finally determined that plaintiff was not entitled to the restraining order or injunction or until something occurs that is the equivalent of a decision on this question.

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 2972 at 458 (1995) (hereinafter "Wright").[7]

---

7. Even if a showing of procedural error in the issuance of the preliminary injunction could be

deemed sufficient to establish that the defendant was "wrongfully enjoined" within the meaning

■ MNK's motion for recovery on the bond was therefore premature, for the merits of the action had not yet been determined. The parties' respective claims and defenses were contested and remained to be resolved at trial, as recognized by MNK's request for a trial setting made contemporaneously with the motion for recovery on the bond. The dissolution of the preliminary injunction in January 1993 due to Phoenix's apparent inability to post a bond in the increased amount required by the court did not establish that the original issuance of the preliminary injunction was wrongful or that Phoenix ultimately would not be entitled to a permanent injunction. Phoenix's cause of action for a permanent injunction was still pending before the court.

Although MNK attempted to present some evidence regarding the merits of the underlying claims at the hearing on its motion for recovery on the bond, the district court properly refused to hear such evidence at this interlocutory proceeding; the validity of the parties' respective causes of action and defenses properly was to be addressed at trial with the usual notice and opportunity to present all relevant evidence, not in an abbreviated motion proceeding.[8]

Ultimately, no trial was conducted due to the district court's order of September 28, 1993, striking Phoenix's pleadings and entering Phoenix's default on the counterclaim as a sanction for the failure to respond to discovery requests. This order was effectively a final decision dismissing Phoenix's injunction action, and for purposes of this opinion, we will assume that the order was equivalent to a final determination that Phoenix was not entitled to an injunction.[9] However, both this order and the default judgment that MNK thereafter obtained on its counterclaim were issued long after the presentation of MNK's motion for recovery on the bond. MNK never renewed its motion for judgment on the bond after obtaining the order striking Phoenix's pleadings. Therefore, no motion for recovery from the surety, based upon a final determination that MNK had been wrongfully enjoined, was ever presented to the district court.

■ In addition, the district court was correct in denying liability on the bond because MNK presented no evidence of damages covered by the bond. The purpose of a preliminary injunction bond is to secure payment of such costs, damages and attorney fees "as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." I.R.C.P. 65(c). Therefore, a surety's liability is limited to compensation for injury directly attributable to the preliminary injunction. *See Devine v. Cluff,* 110 Idaho 1, 4, 713 P.2d 437, 440 (Ct.App.1985); *Tholen v. Sandy City,* 849 P.2d 592, 597 (Utah Ct.App.1993); *Wright, supra,* § 2973. In this case, MNK asserted several types of damages, but none that could be ascribed to the preliminary injunction.

of I.R.C.P. 65(c), it would be of no aid to MNK. MNK has not claimed any procedural irregularities in the issuance of the preliminary injunction. On appeal, MNK asserts that the procedure followed in issuance of the *temporary restraining order* was flawed. However, procedural frailties attending issuance of the restraining order were not raised before the trial court as a basis for MNK's request to recover on the injunction bond, and therefore are not properly presented as an issue on appeal. Moreover, any error in issuance of the restraining order could not serve as a basis for recovery on a bond that was provided to secure against loss arising from the subsequent preliminary injunction, not the restraining order. When bonds are issued at various stages of injunction litigation, "the liability on each bond applies only to that stage of the proceedings for which it was issued." *Wright, supra,* § 2974 at 469.

8. If MNK believed that uncontroverted evidence established its right to prevail on all issues relating to Phoenix's request for an injunction, the proper procedure would have been to file a motion for summary judgment, appropriately supported by evidence showing the absence of any genuine issue of material fact, pursuant to I.R.C.P. 56.

9. It might be argued, however, that because this order was issued as a sanction and not as a determination of the merits of the injunction claim, it should not be regarded as a final determination that MNK was wrongfully enjoined. *See Recovery for Wrongful Interlocutory Injunctions under Rule 65(c),* 99 Harv.L.Rev. 828 (1986). We need not resolve that question in this case.

■ MNK first contends that it was entitled to recover prejudgment interest on the sum of $215,000, which was the amount alleged to be owed by Phoenix at the outset of the action. MNK did not show, however, that it would have obtained $215,000 if the sale of real and personal property had not been enjoined. MNK presented no evidence that, but for the preliminary injunction, it could have sold any of the property in dispute, or at what price, and hence did not prove that it lost interest on potential sale proceeds. In fact, MNK acknowledged that when it attempted to conduct a public sale of the property before being notified of the temporary restraining order, no one appeared to bid on any of the items. The accrual of interest on the underlying debt itself was not caused by the preliminary injunction but was a consequence of Phoenix's breach of contract.

■ MNK also argues for recovery of the reasonable rental value of storage space occupied by the personal property while the preliminary injunction was effective. MNK's evidence falls short again, however, because MNK did not show that it could have sold or otherwise disposed of the property if it had not been restrained by the preliminary injunction. MNK's claim of damages also included the principal of loans and credit card debts incurred after issuance of the preliminary injunction. No causal connection between the injunction and this indebtedness is demonstrated.

■ MNK also sought attorney fees. Such fees, if incurred as a result of a wrongful preliminary injunction, are covered by the injunction bond. I.R.C.P. 65(c); *Devine v. Cluff, supra.* As to MNK's evidence on this claim, the district court commented that, "[T]he claim for attorney's fees and costs were computed, apparently, from the inception of the attorney/client relationship to the date of this hearing with no effort being made to distinguish which fees or costs were incurred in connection with that Preliminary Injunction." We agree. MNK's itemization of attorney fees does not distinguish between services performed in connection with the preliminary injunction and those related to other aspects of the litigation; it even includes fees incurred as much as three months after the preliminary injunction was dissolved. MNK relies upon *Durrant v. Christensen,* 117 Idaho 70, 785 P.2d 634 (1990), which holds that attorney fees incurred in an adjudication on the merits are recoverable under Rule 65(c) "if legal services necessary to defend the merits of the case were identical to services performed in dissolving a restraining order." *Id.* at 73, 785 P.2d at 637. Here, however, some of the litigation activity plainly was unrelated to the preliminary injunction, including the preparation and pursuit of MNK's counterclaim and third party complaint. Therefore, segregation of the fees ascribable to the preliminary injunction was necessary, but was not provided by MNK. *See Devine v. Cluff,* 110 Idaho at 4, 713 P.2d at 440.

Finally, MNK sought compensation at a rate of thirty dollars per hour for the time that its president, Mr. Gessford, personally devoted to the litigation. As with the attorney fees claim, however, there was no showing that this expenditure of time was directly related to the preliminary injunction. We conclude, therefore, that MNK failed to prove any quantity of damages that would not have been incurred but for the preliminary injunction.

## III.

### CONCLUSION

The district court did not err in denying MNK's motion for judgment on the bond. The motion was prematurely presented before there had been any final determination that Phoenix was not entitled to an injunction, and after obtaining dismissal of Phoenix's injunction action, MNK did not renew its request for a judgment against the surety.

Even if MNK's motion had not been presented prematurely we would be constrained to affirm the district court's denial of relief because MNK did not prove any loss occasioned by the preliminary injunction itself as distinguished from losses which were caused by Phoenix's breach of contract and other aspects of the ensuing litigation.

The order denying MNK's motion for judgment on the bond is affirmed. Costs to respondents.

WALTERS, C.J., and PERRY, J., concur.